STATE OF CONNECTICUT *v.* DANIEL WEIDENHOF II
(13021)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued October 1—decision released November 17, 1987

*Kevin C. Connors,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Donald B. Caldwell,* state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the trial court erred in admitting into evidence the incriminatory statements that the defendant made during a custodial interrogation. The defendant, Daniel Weidenhof II, was charged in a three count informa-

tion with the crimes of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a,[1] threatening in violation of General Statutes § 53a-62,[2] and having a weapon in a motor vehicle in violation of General Statutes § 29-38.[3] After a jury verdict finding him guilty on all counts, the defendant was sentenced to a total effective term of ten years imprisonment, to be suspended after two and one-half years and followed by five years of probation. The defendant appeals from this judgment. We find no error.

[1] "[General Statutes] Sec. 53a-92a. KIDNAPPING IN THE FIRST DEGREE WITH A FIREARM: CLASS A FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of kidnapping in the first degree with a firearm when he commits kidnapping in the first degree as provided in section 53a-92, and in the commission of said crime he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be convicted of kidnapping in the first degree and kidnapping in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[2] "[General Statutes] Sec. 53a-62. THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience."

[3] "[General Statutes (Rev. to 1985)] Sec. 29-38. WEAPONS IN VEHICLES. Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any pistol or revolver, any dirk knife or switch knife or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, and any other dangerous or deadly weapon or instrument, including any slung shot, black jack, sand bag, metal or brass knuckles, or stiletto, or any knife, the edged portion of the blade of which is four inches or over in length."

The jury could reasonably have found the following facts. About 4:30 p.m. on Saturday, November 9, 1985, the victim, a nineteen year old man, was hitchhiking on Route 195 in Willimantic in order to go to work at a convenience store on the University of Connecticut campus at Storrs. He got a ride in a car driven by a lone white male in his late thirties, later identified as the defendant. On the passenger seat of the car there were several magazines, one of which was an explicitly homosexual publication bearing the title "Blue Boy."

During the ride to Storrs, the defendant placed his hand on the victim's knee, called him a "pretty boy," and indicated his interest in homosexual relations. The victim declined and asked to be dropped off at the next traffic light. When the victim sought to leave the car as it approached the Storrs campus, the defendant objected, pulled out a gun and threatened to "blow [the victim's] head off." As the car slowed for a traffic light, the victim managed nonetheless to jump out and make his way to his place of employment.

The victim reported the incident to the state police later that evening. Several days later, as the result of a further interview, with the assistance of Sergeant Frank Griffin, the victim put together a composite rendering of the operator of the car. The victim selected the defendant's photograph out of a photo array presented to him on January 24, 1986.

On the basis of this information, the police obtained search and arrest warrants that were simultaneously served upon the defendant outside his apartment in the late afternoon of February 4, 1986. Pursuant to these warrants, the police arrested the defendant, searched his apartment and seized his car. In the apartment, they found and seized an automatic pistol, a revolver, an ammunition clip and several homosexual magazines including an issue of "Blue Boy."

Immediately upon the defendant's arrest, the police advised him of his constitutional rights and the defendant initialed a card attesting to that fact. The defendant was then taken for questioning to Troop C headquarters in Stafford Springs. During the subsequent interrogation, the defendant acknowledged that he was a homosexual, that he kept homosexual magazines in his car, and that, on the previous November 9, he had picked up a hitchhiker on Route 195 and had driven him to Storrs. The defendant denied, however, having had a gun in his car or in any other way having committed the crimes with which he was charged.

In appealing from the judgment of conviction, the defendant has raised seven claims of error. He alleges that the trial court erroneously: (1) admitted the defendant's incriminatory statements into evidence; (2) limited the defendant's cross-examination of Sergeant Griffin; (3) admitted the defendant's uncharged prior acts of misconduct into evidence; (4) admitted hearsay testimony of out-of-court identifications of the defendant into evidence; (5) admitted a composite drawing into evidence; (6) admitted a weapon seized from the defendant's apartment into evidence; and (7) admitted a homosexual magazine seized from the defendant's house into evidence. We may conveniently consider jointly the defendant's first two claims, which have constitutional implications, and then his remaining evidentiary claims. We find no error.

## I

The defendant's first two claims of error relate to his challenge of the voluntariness of the incriminatory statements that he made to the state police. He first claims that the trial court erred in admitting into evidence the oral statements that he had made to Sergeant Griffin during the custodial interrogation that immediately followed his arrest on February 4, 1986. These

statements were inadmissible, according to the defendant, because, although he had been warned of his constitutional privilege against self-incrimination in accordance with the rules laid down in *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966),[4] he had not knowingly, intelligently and voluntarily waived his constitutional privilege. His second claim is that the trial court unduly limited his cross-examination of Griffin concerning his alleged waiver of his constitutional rights. We find no error in either of these rulings.

The state bears the burden of proving, by a preponderance of the evidence, that a defendant has knowingly, intelligently and voluntarily waived the rights that inhere in the privilege against self-incrimination. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Boscarino,* 204 Conn. 714, 743, 529 A.2d 1260 (1987); *State* v. *Hernandez,* 204 Conn. 377, 395, 528 A.2d 794 (1987); *State* v. *Gray,* 200 Conn. 523, 533, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). By admitting the defendant's custodial statements into evidence, the trial court implicitly determined, as a finding of fact, not only that the defendant had been adequately warned about his *Miranda* rights but also that he had properly waived these rights.[5] Because the finding of

---

[4] The privilege against self-incrimination is contained both in the fifth and fourteenth amendments to the United States constitution and in article first, § 8, of the Connecticut constitution. We have held that the principles set out, as a matter of federal constitutional law, in *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), have an independent basis in our state constitution. *State* v. *Burge,* 195 Conn. 232, 246 n.15, 487 A.2d 532 (1985); *State* v. *Ferrell,* 191 Conn. 37, 41, 463 A.2d 573 (1983); *State* v. *Falby,* 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982); see *Michigan* v. *Long,* 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

[5] The defendant did not request a pretrial hearing on whether his incriminatory statements should be suppressed. The issue was raised instead during the state's case-in-chief when Sergeant Griffin was called to testify

waiver implicates important constitutional rights, our review of this finding of fact requires us to undertake "a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence." *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); *State* v. *Hernandez,* supra; *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).

The record in this case demonstrates that, before beginning the interrogation at Troop C headquarters, Griffin reminded the defendant that he had previously been informed of his constitutional rights. The defendant had indeed earlier initialed a card containing *Miranda* warnings, and had orally indicated his understanding of those warnings. After the reminder, Griffin asked the defendant whether he would be willing to answer questions without an attorney present. The defendant replied affirmatively and proceeded to respond in detail to the questions that Griffin put to him. The defendant, however, neither gave the police a written statement nor did he execute a written waiver of his constitutional rights.

The testimony of the police concerning the circumstances of the defendant's interrogation depicts a literate adult, with an adequate command of the English language, who was "calm, cooperative, [and] competent," who participated willingly in their dialogue, and who was not under the influence of either drugs or alcohol. There is no evidence to the contrary. Significantly, there is neither allegation nor evidence that the police resorted to threats, promises or other improper tactics to induce the defendant to make incriminatory statements.

---

about his interrogation of the defendant. The court determined the admissibility of the statements during a voir dire hearing outside the presence of the jury at which the defendant did not testify.

The defendant advances two related arguments in support of his contention that this record is insufficient to establish waiver. As a general matter, he characterizes the record that we have summarized above as "virtually barren" with respect to proof of waiver. This claim is unsustainable on its face. The unchallenged testimony of the police officers, coupled with the absence of any allegations of fact that cast doubt upon the knowing and voluntary nature of the defendant's waiver, suffice to support the trial court's factual finding. See *State* v. *Aversa,* 197 Conn. 685, 697, 501 A.2d 370 (1985). As a further, more specific, claim of error, the defendant would have us draw an inference against waiver from the failure of the police to ask the defendant, in so many words, whether he wished to waive or give up his constitutional rights. Despite the adequacy of the *Miranda* warnings that he received and understood, it was not enough, according to the defendant, to ask him whether he was willing to answer questions without an attorney present. In effect, the defendant would have us condition the validity of a waiver on the utterance of talismanic words. We decline to do so. Apart from the absence of any authority for so rigid a principle, we doubt that a mandatory reference to "constitutional rights" would be more likely to communicate to lay persons the essence of the privilege against self-incrimination than the question that was put to the defendant in this case. Cf. *State* v. *Suggs,* 194 Conn. 223, 227–28, 478 A.2d 1008 (1984). As did the trial court, we conclude that the state has met its burden of proving, in light of the totality of the circumstances, that the defendant's waiver was knowing, intelligent and voluntary.

The defendant's related constitutional claim on the issue of waiver challenges the trial court's rulings limiting his cross-examination of Griffin to preclude inquiry into the failure of the police to secure a written waiver

of the defendant's *Miranda* rights. From the outset of the trial, the state had acknowledged that the defendant had never been asked to execute such a written waiver. In voir dire proceedings outside the presence of the jury concerning the admissibility of the defendant's statements, the court had correctly ruled that a written waiver was not essential. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *State* v. *Aversa,* supra, 696; *State* v. *Harris,* supra, 580. In the presence of the jury, the defendant sought nonetheless to cross-examine Griffin about the contents of a written rights waiver form and the decision of the police not to use such a form in this case. Although the court permitted other questioning about the circumstances surrounding Griffin's interrogation of the defendant, the court ruled that the proffered inquiry into the waiver form was inadmissible. In the course of sustaining the state's objection to this line of questioning, the court expressly instructed the jury that it was unnecessary for the state to obtain a written waiver of *Miranda* rights. Conceding the propriety of this instruction, the defendant nevertheless maintains that the court impermissibly restricted his constitutional right to cross-examine Griffin, who was, on the waiver issue, one of the principal witnesses against him. We disagree.

The sixth amendment to the United States constitution confers upon a defendant the right to be confronted with the witnesses against him.[6] A significant aspect of the right of confrontation is the cross-examination of adverse witnesses " 'to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the [witnesses].' " *State* v. *George,* 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469

---

[6] The defendant did not raise this claim under article first, § 8, of the Connecticut constitution.

U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 768 (1985); *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Because the core value protected by the confrontation clause is the enhancement of the truth-seeking process; see *State* v. *Jarzbek,* 204 Conn. 683, 692–93, 529 A.2d 1245 (1987); "[c]ross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982); *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979). Where reliability is not directly implicated, however, the scope of cross-examination is within the discretion of the trial court. *State* v. *Vitale,* 197 Conn. 396, 402–403, 497 A.2d 956 (1985); *State* v. *Gaynor,* 182 Conn. 501, 510–11, 438 A.2d 749 (1980).

In this case, we agree with the state that the acknowledged failure of the police to request a written waiver form had no significant implication for the reliability of Griffin's testimony concerning his interrogation of the defendant. The jury had to decide whether to believe Griffin's account of what had transpired during the interrogation and what weight to give the statements it found credible. *State* v. *Vaughn,* 171 Conn. 454, 460–61, 370 A.2d 1002 (1976). The trial court could reasonably have determined that an inquiry into written waivers would not appreciably have assisted the jury in its task. We reiterate that, except with regard to the waiver form, the court freely permitted cross-examination of the witness concerning the circumstances of the interrogation. Accordingly, we conclude that the trial court did not abuse its discretion in ruling as it did.

## II

The defendant's remaining claims of error challenge the validity of a number of evidentiary rulings by the

trial court. The defendant maintains that the trial court erroneously admitted into evidence: (1) testimony concerning prior acts of misconduct by the defendant; (2) testimony concerning the victim's out-of-court identification of the defendant; (3) a composite drawing allegedly depicting the person who had threatened the victim; (4) a revolver found in the defendant's apartment; and (5) a homosexual magazine also found in the apartment. We find no error in any of these rulings.

## A

Under the rubric of "uncharged prior acts of misconduct," the defendant challenges the admissibility of testimony concerning two incidents that occurred in the fall of 1985 at a Mobil gasoline station in Tolland some eight miles from the Storrs campus of the University of Connecticut. One involved the station's owner, Jeffrey Waterhouse, and the other involved its service manager, Charles Markunas. Both of these witnesses testified to seeing homosexual literature openly displayed in the defendant's car while they were selling him gasoline at times proximately related to the alleged crimes in this case. That testimony is not at issue. Both also testified to seeing a gun in the defendant's car, and the defendant contends that this evidence should have been excluded.

At trial, the state offered this evidence both to establish the identity of the defendant's vehicle as the one allegedly used to commit the crimes charged and to rebut the defendant's alleged statement to Griffin that he had never had a gun in his car. The defendant disagreed, claiming that the evidence was irrelevant and could not be used to impeach a nontestifying defendant. With respect to the Waterhouse testimony, the record contains no reference whatsoever to any claim of admissibility or exclusion grounded in the rules pertaining to evidence of alleged prior misconduct. With

respect to the Markunas testimony, while the defendant adverted to the grounds "previously stated with respect to the prior witness, [Waterhouse]," the record is clouded by the trial court's subsequent sua sponte interjection of "bad act" as the basis for admissibility. The defendant, although not overtly acquiescing in this characterization, which resulted in a limiting instruction to the jury, resisted the court's request for clarification of his position, stating merely: "In terms of what I'm requesting, at this point I am objecting to the witness' testimony." In our judgment, with respect to the testimony of both of these witnesses, the record fails to manifest the defendant's compliance with the Practice Book requirement that appealable claims of error should have been "distinctly raised at the trial." Practice Book § 4185. We perceive in this case no manifest injustice in declining to engage in a plenary review of the claims concerning prior misconduct evidence that the defendant failed to pursue in the trial court.[7] There was no error in admitting this testimony.

## B

The defendant's next claim of evidentiary error arises out of third party testimony offered by the state to cor-

---

[7] There is no controversy about the rules that govern a trial court's discretion to admit uncharged misconduct into evidence. Although a defendant's prior misconduct is inadmissible to prove bad character or criminal propensities; *State* v. *Williams,* 203 Conn. 159, 185, 523 A.2d 1284 (1987); *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986); *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986); C. McCormick, Evidence (3d Ed. 1984) § 190, pp. 557–58; such evidence may be admissible for other purposes. Among the legitimate purposes is the use of such testimony to establish identity through a common plan or design. Reliance on a common plan or design requires the state to show, however, that earlier incidents and the crime presently charged are "sufficiently distinctive and unique 'as to be like a signature.' McCormick, supra, p. 560; *State* v. *Mandrell,* 199 Conn. 146, 152, 506 A.2d 100 (1986); *State* v. *Braman,* [191 Conn. 670, 677, 469 A.2d 760 (1983)]." *State* v. *Morowitz,* supra, 443. Application of these rules in this case would not have been plain error, because of the relevance of this evidence to the issue of identity.

roborate identifications made by the victim. At trial, the victim made an in-court identification of the defendant and identified the automatic weapon seized from the defendant's home as similar to the one displayed at the time of the crime. When Griffin was asked to testify to two corroborating out-of-court identifications by the victim, one a selection of the defendant's picture from a photo array, and one identifying the automatic gun, the defendant objected that such testimony was inadmissible because it was hearsay. The trial court overruled these objections because the victim was in court and available for cross-examination.

The trial court's ruling was correct. In *State* v. *McClendon,* 199 Conn. 5, 11, 505 A.2d 685 (1986), we held that an exception to the hearsay rule was warranted for out-of-court identifications that are reliable and can be tested by cross-examination of the relevant witnesses. See also *State* v. *Frost,* 105 Conn. 326, 341, 135 A. 446 (1926). The defendant has not challenged the underlying reliability of the victim's out-of-court identifications and had ample opportunity to cross-examine both the victim and Griffin.

## C

The defendant's third claim of evidentiary error challenges the admission of a composite drawing that the victim, with the assistance of Griffin, assembled from the victim's description of the person who had kidnapped and threatened him. When the victim testified about the composite drawing during his direct examination, the state offered the drawing into evidence, but withdrew that offer because of the defendant's objection. The victim did, however, testify about how the drawing had been prepared and that he was satisfied with the likeness it depicted. Griffin subsequently gave a further demonstration about the preparation of composite drawings and specifically testified to his

cooperation with the victim in putting an appropriate composite together. The defendant nevertheless objected to having the composite made an exhibit on the basis of Griffin's testimony.

We agree with the state that the defendant's objection was properly overruled by the trial court. Admissibility of a composite drawing requires a proper foundation. The moving party must present witnesses with firsthand knowledge of how the composite was prepared and of how accurately it portrays that which it is intended to depict. *State* v. *Packard,* 184 Conn. 258, 275, 439 A.2d 983 (1981). In this case, such testimony was provided by the victim and by Griffin. The necessity for a proper foundation is substantive and not formal. If the court is provided with the information needed for a proper ruling, it matters not whether that information comes from one witness or two. If, arguendo, the victim would have been the preferable witness through whom to offer the drawing into evidence, this defendant, who insisted on an alternate procedure, cannot be heard to complain. "Action induced by an appellant cannot ordinarily be a ground of error." *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987); *State* v. *Harman,* 198 Conn. 124, 135–36, 502 A.2d 381 (1985); *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982); *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973).

D

The defendant's last two claims of evidentiary error concern two items seized from his apartment, in accordance with a search warrant, at the time of his arrest. The defendant challenges neither the validity of the search warrant, nor the propriety of introducing into evidence the automatic pistol that the police found in their search. He maintains, however, that the state

failed to establish a sufficient evidentiary basis for introducing a revolver and a homosexual magazine as exhibits against him.

The revolver was admitted through the testimony of Charles Markunas, the service manager of the Mobil gasoline station in Tolland. As part of his testimony concerning his observation of the defendant in a car in which homosexual literature was openly displayed, Markunas, as previously discussed, properly testified to seeing the butt end of a gun under the front seat of the defendant's car. Markunas identified the gun he had seen as resembling the revolver found in the defendant's apartment, whereas both the victim and Waterhouse had identified the handgun that they had observed as an automatic pistol.[8] We note that, although the information charging the defendant with the crimes of which he was convicted failed to specify the type of handgun that had been used, the defendant never requested a bill of particulars by way of clarification.

The record at trial does not clearly establish the grounds on which the defendant objected to the admission of the revolver. Initially, the defendant objected that there was "no connection" between the weapon used in the incident on November 9, 1985, and the weapon identified by Markunas, and that the revolver should therefore be excluded as immaterial and irrelevant. When the court pointed out the latent ambiguity about the weapon designated in the complaint, defense counsel retreated and acknowledged: "With respect to your Honor's recitation of the prior testimony, that would tend to indicate some, some probative value to this case, I will concede that." He then urged the court to consider that the probative effect

---

[8] Neither the testimony of the victim nor that of Waterhouse definitively established that the handgun they had seen was an automatic pistol.

of the testimony was much less than its prejudicial effect. The court did not pursue that argument but suggested instead that the revolver was admissible for the limited purpose of proving identity by showing a "bad act," i.e., that on a prior occasion the defendant had had a handgun in his car. The defendant did not offer any ground for objection to the admission for this limited purpose, but, when pressed by the court, merely reiterated that, "In terms of what I'm requesting, at this point I am objecting to the witness' testimony." The court, when it admitted the revolver into evidence, expressly cautioned the jury that the revolver was not probative of the defendant's guilt of any of the crimes with which he was being charged.

On appeal, the defendant has returned to his initial argument concerning the lack of relevance of the revolver to the crimes charged. We are unpersuaded. First, that argument, in effect having been abandoned at trial, cannot now be revived. Second, that argument does not address the limited purpose for which the revolver was admitted at trial. In conjunction, these reasons persuade us to sustain the ruling of the trial court. As with the underlying testimony leading to the introduction of the revolver into evidence, given the inadequacy of the record below, the defendant has failed to comply with the requirements of Practice Book § 4185. "All of the claims involve allegations of abuse of the trial court's broad discretion to determine the relevance and admissibility of evidence at trial. *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501 (1980). In the absence of any demonstration that these evidentiary rulings constitute plain error, or that enforcement of our rule will cause injustice; Practice book § 3164 [now § 4187]; we decline to consider these claims." *State* v. *Vass,* 191 Conn. 604, 621, 469 A.2d 767 (1983).

The defendant's claim with respect to the homosexual magazine "Blue Boy" asks us to overturn the trial court's ruling that the magazine had sufficient probative value, despite its potentially prejudicial nature, to warrant its introduction into evidence. According to the victim's testimony, on the day of the alleged crimes he saw a magazine with such a title in the defendant's car and recognized it as a homosexual publication, but did not open it to examine its contents. Over the defendant's objection on grounds of irrelevance and prejudice, the court admitted the magazine into evidence as an exhibit because it corroborated the victim's identification of the car and the car's operator. As it had done on a previous occasion, the court expressly instructed the jury not to draw adverse inferences as to guilt from evidence implicating homosexuality.

On appeal, the defendant acknowledges that the discovery of the magazine in the defendant's apartment had probative value, because he concedes that if the magazine had been Time or Newsweek, the trial court's ruling would have been correct. The sole issue therefore is whether the trial court abused its discretion in determining that the magazine's probative value outweighed its prejudicial impact. See *State* v. *Sharpe,* 195 Conn. 651, 660, 491 A.2d 345 (1985); *State* v. *Reid,* 193 Conn. 646, 656, 480 A.2d 463 (1984). In our review of such discretionary evidentiary determinations, "[w]e will make every reasonable presumption in favor of upholding the trial court's ruling." *State* v. *Morowitz,* 200 Conn. 440, 446, 512 A.2d 175 (1986); see *State* v. *Johnson,* 190 Conn. 541, 549, 461 A.2d 981 (1983).

We conclude that the trial court did not abuse its discretion in this case. The defendant has not challenged, on grounds of undue prejudice, the admissibility of his statements to Sergeant Griffin concerning his homosexual lifestyle. Further, the trial court repeatedly warned the jury that evidence of homosexuality did not

prove that the defendant was guilty of the crimes with which he had been charged. Regardless of its homosexual orientation, the magazine was highly probative to corroborate the victim's testimony. In these circumstances, the court's ruling was not erroneous.

There is no error.

In this opinion the other justices concurred.