STATE OF CONNECTICUT *v.* JAMES AVIS
(13156)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued October 5—decision released December 6, 1988

*William F. Gallagher,* with whom was *Robert P. Borquez,* for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, was *Dennis Santore,* state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is the admissibility of the defendant's written statement, which he claims was procured in violation of the rules of professional conduct, and was involuntary and unreliable. The present proceedings result from a retrial ordered by this court in *State* v. *Avis,* 198 Conn. 644, 504 A.2d 1364 (1986) (*Avis I*). The defendant, James Avis, had been found guilty of felony murder in violation of General Statutes § 53a-54c[1] after a joint trial

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual

with a codefendant, Daniel Vinal, Jr. In *Avis I* we found reversible error in the trial court's failure to grant the defendants' motions for severance and ordered that Avis and Vinal be retried separately.[2] The state thereafter filed a substituted bill of particulars, again charging the defendant with felony murder in violation of § 53a-54c. After a trial to a jury, the defendant was found guilty as charged. He appeals from the judgment sentencing him to a term of imprisonment of not more than life and not less than ten years. We find no error.

The events surrounding the defendant's conviction are fully set forth in *Avis I,* supra, 647. As in that case, the present jury could reasonably have found the following facts. The victim, the defendant and Vinal were together in a Torrington bar early on the morning of October 8, 1978. The defendant knew that Vinal was armed. When the victim left the bar, the defendant and Vinal, in a car driven by the defendant, followed the victim's car as the victim drove toward Litchfield. After blinking his headlights to persuade the victim to pull over, the defendant parked his own car in the immediate vicinity, and he and Vinal accosted the victim in

assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] Vinal was retried and found guilty of the crimes of murder in violation of General Statutes § 53a-54a and felony murder in violation of General Statutes § 53a-54c. Vinal appealed to this court, which found no error. *State v. Vinal,* 205 Conn. 507, 534 A.2d 613 (1987).

his car. Either the defendant or Vinal then attempted to take the victim's wallet; when he resisted, Vinal shot the victim and one of the two took his wallet, which was never recovered. After questioning by the police, the defendant fled the state. The victim died of his gunshot wound. Vinal was later arrested and charged with the murder of the victim.

An investigator hired by Vinal's attorney obtained from the defendant a written statement in which he confessed to shooting and robbing the victim, and exonerated Vinal. The investigator gave the statement to the police who obtained a warrant for the defendant's arrest. The defendant was arrested in Seattle, Washington, and returned to Connecticut for trial.

In the present proceedings, in which the defendant was charged with felony murder, the state conceded that it was Vinal who had shot the victim. What was at issue at trial was the defendant's role in the robbery. The defendant maintained that he had been unaware of Vinal's intent to rob the victim and had himself taken no part in the robbery. The state contended, to the contrary, that the defendant had participated in the robbery in the course of which Vinal killed the victim. After the jury found the defendant guilty, the trial court denied his motions for a new trial, to arrest judgment and for acquittal.

In his appeal from the trial court's judgment, the defendant has raised seven issues that can conveniently be addressed in four groupings. The defendant's principal claim of error is that the trial court erred in denying his motion to suppress his written statement. He also contends that the trial court made several erroneous evidentiary rulings, erred in its charge to the jury and in its submission of documents to them, and improperly denied his motion for acquittal.

## I

The main issue on appeal is the defendant's claim that the trial court should have granted his motion to suppress his written statement. He claims that his statement was inadmissible for three reasons: unethical procurement, involuntariness and unreliability. We are not persuaded.

## A

In the defendant's motions to suppress at trial,[3] he claimed that his written statement was inadmissible because it had been obtained through the allegedly unethical conduct of Joseph Gallicchio, Vinal's attorney. Under Disciplinary Rule 7-104 (A) (2) of the Code of Professional Responsibility, an attorney must avoid giving a person legal advice when there is a reasonable possibility of conflict of interest between that person and the attorney's client.[4] According to the defendant, a violation of this rule precludes the state from introducing the resulting document into evidence.

A necessary predicate to the defendant's argument is a factual finding of professional misconduct. The trial court, however, made the contrary finding. Even if we apply to this finding the scrupulous review that we undertake when constitutional rights are possibly implicated; see *State* v. *Weidenhof*, 205 Conn. 262, 267–68, 533 A.2d 545 (1987); the trial court's finding must stand.

---

[3] The defendant filed motion to suppress the statement dated May 6, 1986, and a motion to dismiss or in limine dated September 5, 1986. After a suppression hearing, the trial court denied both motions.

[4] Disciplinary Rule 7-104 (A) (2) of the Code of Professional Responsibility, in effect at the time in question, provided in relevant part: "During the course of his representation of a client a lawyer shall not . . . (2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

The relevant evidence, at trial, began with a showing that Robert DePretis, an investigator hired by Vinal's attorney, Gallicchio, located the defendant in New Hampshire. DePretis, Gallicchio, and Vinal then went to New Hampshire where Vinal, wearing a "wire," met the defendant to discuss the incident. The defendant was aware of the "wire" and refused to enter into a discussion. Eight days later, after another visit from DePretis and Gallicchio, and a private conference with the latter, the defendant agreed to discuss the incident, but only if Vinal were present. The following day the defendant spoke with Vinal alone and then wrote a confession in DePretis's presence. The confession stated, inter alia, that the defendant had robbed and shot the victim and that Vinal had been in the car unconscious during the incident.[5] When the defendant gave the statement to DePretis, he also instructed him not to release it until the following Monday. DePretis held the statement until Monday and then turned it over to the Connecticut state police, who obtained and executed a warrant for the defendant's arrest.

This record contains no definitive evidence that the defendant's written statement was the product of conduct by Gallicchio that violated DR 7-104 (A) (2). The

---

[5] The statement reads:

"To whom it may concern:

On or about October 8, 1978, in the early morning hours, I pulled a vehicle over on Old Route 8, East Litchfield, Connecticut. The vehicle was driven by the sole occupant known to me as 'Freddy.' I intended to rob him. He put up a struggle, and I fired at him twice. I left him unconscious, his car engine running. The wallet that was in his possession prior to my taking it was discarded by me at the bottom of Toll Gate Hill in a brook in Litchfield. The man riding in my vehicle was passed out and knew absolutely nothing about the incident mentioned above. My passenger was Danny Vinal. I found the gun in the front seat of the car I drove. I really don't know what make or model it was. I discarded the weapon somewhere during my travels since this incident occurred.

I'm confessing of this crime to rid myself of the overpowering guilt feelings. I gave this confession to Robert DePretis of Torrington, Connecticut.

Signed James J. Avis"

defendant testified that he relied upon Gallicchio because Gallicchio had formerly represented him in a matrimonial matter, that he had been influenced by Gallicchio's advice about his legal situation, and that Gallicchio promised him monetary benefits, from Vinal, for his statement. Gallicchio, however, testified otherwise. He denied having made representations about financial rewards for a statement. According to Gallicchio, the defendant was told that Gallicchio represented Vinal and was looking for information about what had happened on the night in question, which Vinal allegedly could not remember. Gallicchio stated that the defendant then indicated that he might have something to say, but would not say it unless Vinal were present.

On this record, it was not clearly erroneous for the trial court to have found Gallicchio the more credible witness and to have concluded that the state had proven that Gallicchio had not given the defendant legal advice. In the absence of a factual showing of a violation of DR 7-104 (A) (2), we need not reach the question of whether a private attorney's unethical behavior would require the court to exclude evidence obtained thereby from a criminal defendant not in police custody.

### B

The defendant also contends that the court should have granted his motion to suppress his written statement because it was given involuntarily. In accordance with settled principles of due process, the state may not make use of an involuntary confession at trial; *Brown* v. *Allen,* 344 U.S. 443, 475, 73 S. Ct. 397, 97 L. Ed. 469 (1953); *State* v. *Smith,* 200 Conn. 465, 475, 512 A.2d 189 (1986); and bears the burden of proving voluntariness by a preponderance of the evidence. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Smith,* supra, 477. The dispositive question in determining voluntariness is: " 'Is the

confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' " *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 225–26, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). In order to resolve this question, a court must undertake a factual determination that considers the totality of the relevant circumstances. *State* v. *Smith,* supra, 477; *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).[6]

On the record before us, we conclude that the trial court was not clearly erroneous in finding the defendant's statement voluntary. The defendant contends that the statement was made involuntarily because it was made upon the advice of a person he considered to be his attorney and in return for a promise of financial gain from Vinal. As previously noted, both of these allegations were controverted at trial. Furthermore, the record demonstrates the defendant's exercise of independent control over the circumstances leading to his statement. For example, he repeatedly refused to cooperate in efforts to have a discussion of the incident until he could set preconditions for such a conference, and he successfully insisted on a delayed time schedule for public disclosure of his statement after he had

[6] The United States Supreme Court has stated that "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Colorado* v. *Connelly,* 479 U.S. 157, 166, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). That court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id., 167. We reserve for another day the issue of whether statements made to a private individual may be found involuntary within the meaning of the due process clause contained in the Connecticut constitution.

written it. Finally, there is neither allegation nor evidence that the defendant was threatened, physically restrained or coerced into giving the statement. In light of the totality of the circumstances surrounding the defendant's statement, the trial court reasonably found that the defendant's will was not overborne nor was his capacity for self-determination critically impaired.

## C

The defendant further contends that the trial court erred in denying his motion to suppress his written statement because it was substantially inaccurate, unreliable and untrustworthy. The basis for this claim is that the statement materially contradicted other evidence and was inconsistent with the state's theory of the incident. The trial court determined, however, that the statement was more probative than prejudicial.[7]

The trial court has wide discretion to determine the relevancy of evidence. *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *State* v. *Sharpe,* 195 Conn. 651, 658–59, 491 A.2d 345 (1985); *State* v. *Piskorski,* 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. *State* v. *Fritz,* supra, 167–68; *State* v. *Boucino,* supra; *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985).

---

[7] The trial court stated: "The reliability and trustworthy arguments, again, perhaps raise more smoke than substance. . . . [W]hile there was some inconsistency in the statement apparently bearing on the truth thereof, this is not to say that the entire statement or entire confession has to be excluded for that reason.

"The Court is satisfied that it does have substantial probative value, that that probative value does outweigh any prejudicial or inflammatory consideration it may have, and it does shed light actually on the fact that there really was a robbery."

The defendant contends that the state cannot use his written statement as evidence that a robbery occurred because the statement includes his confession that he shot the victim. According to the defendant, the unreliability of the statement is established by the state's own acknowledgement, in its prosecution of Vinal, that Vinal, and not the defendant, shot the victim. In the present proceedings, however, the state has not relied upon the statement in its entirety but only upon the portion that is evidence of the defendant's participation in a robbery. Such reliance is consistent with the conviction of Vinal for the robbery and murder of the victim.

Statements may be admitted into evidence although portions of those statements are known to be false. For example, statements intended by the defendant to be exculpatory may be admitted for an inculpatory purpose. *State* v. *Stepney,* 191 Conn. 233, 251, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982) (misstatement admissible because it permits the inference that it was made to avoid detection). Just as the state need not vouch in its entirety for the credibility of the witnesses it calls; see, e.g., *State* v. *Williams,* 204 Conn. 523, 530–31, 529 A.2d 653 (1987); *State* v. *Graham,* 200 Conn. 9, 14–18, 509 A.2d 493 (1986); so the state is not required to adopt an all or nothing position with respect to the admission of written statements. The trial court's decision to admit the defendant's written statement into evidence was not an abuse of discretion in the circumstances of this case.

II

Apart from the admissibility of his inculpatory statement, the defendant raises three other evidentiary

issues. He maintains that the trial court erred in: (1) limiting his direct examination of the state's attorney and an assistant state's attorney concerning the reliability of his statement; (2) limiting his cross-examination of Robert DePretis by excluding evidence of prior allegedly inconsistent statements; and (3) limiting his cross-examination of DePretis by excluding evidence of alleged misconduct on his part. None of these evidentiary rulings was erroneous.

A

The defendant sought to examine the state's attorney and assistant state's attorney, during the hearing on the motion to suppress the defendant's written statement, in order to ascertain their opinions about the statement's reliability. The defendant claims that the trial court erred in sustaining the state's objection that these questions were irrelevant and immaterial.

The defendant maintains that the excluded questions were relevant with respect to the reliability of his confession because the state is under an ethical obligation not to offer tainted evidence. Whatever the contours of that obligation may be; see *State* v. *Jones*, 180 Conn. 443, 455, 429 A.2d 936 (1980), overruled in part on other grounds, *State* v. *Powell*, 186 Conn. 547, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut*, 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982); *State* v. *Moynahan*, 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); we have already held that it does not encompass a duty to suppress a statement in its entirety simply because the state disavows it in part. See part IC, supra. In light of this holding, the trial court did not abuse its discretion in ruling that the proffered evidence was irrelevant and immaterial. *State* v. *Williams*, 203 Conn. 159, 183–84, 523 A.2d 1284 (1987); *State* v. *Fritz*, supra, 167–68.

## B

The defendant sought to impeach the credibility of Robert DePretis by cross-examining him about allegedly inconsistent prior statements. The trial court ruled, on the state's urging, that DePretis's prior statements at the defendant's first trial were not materially inconsistent with his present testimony. The defendant assigns error to this ruling and to the trial court's consequent refusal to permit the questioning or to admit the earlier transcript into evidence.

The allegedly inconsistent statements in this case concern conversations that DePretis had with the defendant in New Hampshire when the defendant was persuaded to write his inculpatory statement. First, on cross-examination in the present trial, DePretis testified that he had gone to New Hampshire in order to find out what had happened on the night of the murder, because Vinal allegedly could not remember. In the *Avis I* trial, the witness had answered in the affirmative a question asking him whether he had hoped that the defendant would incriminate himself and exonerate Vinal. Second, during the present cross-examination, DePretis testified that he had never told the defendant that the victim's wallet was missing, whereas, in *Avis I,* his response to a similar question had been, "I believe I may have."[8] The trial court found no inconsistencies in either of these sets of statements.

---

[8] On cross-examination, DePretis testified:
"Q. You never told Mr. Avis that a wallet was missing?
"A. No.
"Q. You never did?
"A. No."
In the July 9, 1981 testimony that the defendant contends is inconsistent, DePretis testified:
"Q. Did you tell him that [the victim's] wallet was missing?
"A. I believe I may have.
"Q. Before he wrote the confession? . . .
"The Court: You have to answer the question, oh you're thinking.
"The Witness: Yes. Um, I can't recall."

Before examining the particulars of the defendant's claims of error, we must clarify the applicable standard of review. The defendant maintains that the trial court's limitation of the DePretis cross-examination violated the defendant's constitutional rights of confrontation and due process. In light of the defendant's wide-ranging cross-examination of DePretis, we are not persuaded that his claim has constitutional implications. The defendant sought to establish that DePretis had been inconsistent in describing the circumstances surrounding the execution of the defendant's written statement, but the alleged inconsistencies did not directly implicate any improper motive, interest, bias or prejudice on DePretis's part. In these circumstances, the scope of cross-examination raises an evidentiary and not a constitutional question, and is within the discretion of the trial court. *State* v. *Weidenhof,* supra, 270–71; *State* v. *Douglas,* 203 Conn. 445, 455, 525 A.2d 101 (1987).

As an evidentiary matter, evidence of a witness's prior inconsistent statement is admissible to attack the witness's credibility. *State* v. *Reed,* 174 Conn. 287, 302, 386 A.2d 243 (1978); *State* v. *Vega,* 163 Conn. 304, 307, 306 A.2d 855 (1972); *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965). A statement is admissible as a prior inconsistent statement, however, only when the trial court is persuaded that, taking the testimony of the witness as a whole, the statements are in fact inconsistent. *State* v. *Piskorski,* supra, 710; *State* v. *Reed,* supra, 302–303; *State* v. *Chesney,* 166 Conn. 630, 636, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974). Such a determination as to inconsistency lies within the discretionary authority of the trial court. *State* v. *Piskorski,* supra, 711; *State* v. *Reed,* supra, 303.

Applying these criteria in the present circumstances, we find no error. There is certainly no clear inconsistency with respect to DePretis's interest in discovering what had happened on the night of the murder and his hoping that he might learn something that would inculpate the defendant and exculpate his client, Vinal. The various statements about the victim's missing wallet present a closer question, but they too are not, in context, inconsistent. When DePretis, in *Avis I,* testified about possibly having told the defendant that the wallet was missing, he could not recall whether this conversation had occurred before or after the defendant wrote his confession. In the present proceedings, prior to the questioning at issue here, DePretis testified that he had discussed the missing wallet with the defendant *after* the defendant had told him of taking the wallet during the robbery.[9] Consequently, DePretis stated in both trials that he had discussed the wallet with the defendant. In the testimony at issue here, DePretis was not testifying that he had never discussed the wallet with the defendant, but rather that he did not *tell* the defendant that the victim's wallet was missing.[10] When DePretis's testimony is viewed in its entirety, it is not clear that his statements were inconsistent, and the trial court accordingly did not abuse its discretion in finding no inconsistency.

[9] DePretis testified: "Q. Was there any indication between you and Avis about the contents of that particular statement?

"A. In reference to the wallet, for corroborative purposes, to indicate where he had discarded it, so the police could retrieve it, and that would corroborate the facts in that statement.

"Q. So I'm clear on this, you told him you wanted to know where the wallet had been thrown?

"A. After he told me he had taken it during the robbery."

[10] In addition, we note that DePretis's statements regarding whether he told the defendant that the victim's wallet was missing are substantively irrelevant. Later testimony by the defendant provides support for a conclusion that the victim's wallet was taken and that, therefore, a robbery occurred. The defendant testified that after the incident, Vinal told him to stop the car because he had to throw something out. Vinal then got out of the car and threw a wallet into the river.

## C

The defendant also sought to impeach the credibility of DePretis by cross-examining him about alleged prior misconduct. Because DePretis had been named in a grand jury report investigating alleged misconduct in the Torrington police department, the defense attempted to ascertain from DePretis whether he had ever received proceeds from the illegal sale of evidence held by the Torrington police while he was a member of that department. The trial court sustained the state's objection to this questioning. The defendant contends that the court should not have excluded this evidence because it was relevant to the veracity of DePretis.

A witness may be cross-examined regarding specific acts of misconduct only if they bear a specific significance upon the issue of the witness's veracity. *State v. Martin,* 201 Conn. 74, 86, 513 A.2d 116 (1986); *State v. Sharpe,* supra, 658; *State v. Dolphin,* 195 Conn. 444, 459, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). " 'Whether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court.' " *State v. Martin,* supra, 86, quoting *State v. Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985).

The trial court could reasonably have concluded that the proffered evidence was lacking in factual support and more likely to be prejudicial than probative. The court noted that the report of an investigatory grand jury is, at best, accusatory. The alleged misconduct, not being especially relevant to veracity, might have served to distract the jury's attention. Accordingly, the trial court's ruling was not an abuse of its discretion.

## III

The defendant claims that the trial court erred in its instructions to the jury and in the documentation it sub-

mitted to the jury for its deliberations. We find no reversible error in either of these claims.

## A

The defendant does not challenge the accuracy of the trial court's basic instructions to the jury. He takes issue, instead, with the trial court's refusal to give supplemental charges to the jury to define "passive acquiescence" and "intentional."

So long as jury instructions provide sufficient overall guidance for the jury; *State* v. *Rodgers,* 198 Conn. 53, 56, 502 A.2d 360 (1985); *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982); *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980); they need not contain standard dictionary definitions, because such definitions are "taken as a matter of common knowledge which the jury is supposed to possess." *State* v. *Asherman,* 193 Conn. 695, 737, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). " 'In appeals not involving a constitutional question the court must determine whether it is reasonably probable that the jury were misled . . . .' " *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982), quoting *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980).

The trial court read General Statutes § 53a-8[11] to the jury in its final instructions. As part of its explanation of liability under this statute, the court charged: "To find a person guilty under this section, you must find he was more than inactively present at the commission of the crime, or passively acquiesced in the crime, or

[11] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

innocently did acts which in fact did aid in the commission of the crime." On seven occasions, the jury requested that the court reread that portion of the charge. During one of these supplemental rereadings, one of the jurors requested that the court define "passively acquiesced." The court refused. The court also refused the defendant's request that the court define "passive acquiescence." The defendant claims that the trial court should have responded affirmatively to these requests.

"Passive acquiescence" is not statutorily defined and has no legal meaning beyond the words' ordinary usage. Consequently, the court would ordinarily not be called upon to define the term. *State* v. *MacFarlane,* 188 Conn. 542, 550–52, 450 A.2d 374 (1982). The jury's multiple requests to hear the portion of the charge dealing with "passive acquiescence," however, support the defendant's claim that the court's refusal to define "passive acquiescence" in response to these requests might have deprived the jury of sufficient guidance in its deliberation. *State* v. *Fletcher,* 207 Conn. 191, 193–94, 540 A.2d 370 (1988). Consequently, we agree with the defendant that the trial court erred in refusing to define "passive acquiescence."

The trial court's error was, however, harmless. The record indicates that the jury was ultimately satisfied with the court's responses to its inquiries. Furthermore, read as a whole, the charge adequately instructed the jury that the defendant could not be convicted pursuant to § 53a-8 without intending to aid, and aiding, in the commission of the crime.[12] It is not probable that the jury was misled to believe otherwise.

[12] The court charged as follows: "To find a person guilty under this section, you must find he had a criminality of intent and unlawful purpose in common with the person or persons who actually committed the crime. . . .

"If you find that a person committed the felony murder in question, then the next thing you must decide is whether the Defendant shared the intent

The defendant also contends that the trial court erred in refusing to grant his request to define the word "intentional" as used in General Statutes § 53a-8. As the Appellate Court has stated: "The plain and ordinary meaning of the word 'intentionally' is so obvious that it is not error for the trial court to refuse to instruct the jury on its statutory definition." *State* v. *Lopez,* 5 Conn. App. 599, 605, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986). In addition, the trial court, on four occasions, read to the jury the definition of intentional conduct contained in General Statutes § 53a-3 (11). The jury did not request that "intentional" be defined and there is no showing that it was confused by the court's refusal to grant the defendant's request to define that term. The court's refusal of the defendant's request was therefore not erroneous.

## B

The defendant also claims that the jury's deliberations were impaired because the trial court, over his objection, erroneously submitted his original indictment to the jury. The indictment that underlay the proceedings in *Avis I* charged that either the defendant or Vinal had shot the victim. The substituted bill of particulars filed by the state before the defendant's retrial charged instead that "in the course of and in furtherance of the said robbery or flight therefrom, the co-participant, Daniel Vinal, caused the death of the victim . . . . " A subsequent substituted bill of particulars specifically alleged that Vinal had caused the death of the victim.

The trial court submitted the original indictment to the jury on the ground that the jury had been adequately instructed about the charge on which the defendant was being prosecuted. As the state virtually

of the person who committed the crime and, again, let me remind you that the intent which I speak of is the intent to steal, not to kill."

concedes, the trial court erred. "The trial court should submit no issue to the jury which is foreign to the facts in evidence, or upon which no evidence was offered, and it should not submit to the jury considerations which find no support in the evidence." *State* v. *Rodgers,* supra, 56; see also *State* v. *Cofone,* 164 Conn. 162, 168, 319 A.2d 381 (1972).

We are, however, persuaded that the trial court's error was harmless. The court had correctly instructed the jury that the substituted bill of particulars stating that Vinal caused the victim's death was binding on the state and that the defendant was not charged with intentional murder.[13] The court had also correctly instructed the jury that the indictment was not to be considered evidence. On this state of the record, the defendant was not prejudiced by the court's error and suffered no substantial injustice because of it. *State* v. *Smith,* 198 Conn. 147, 153, 502 A.2d 874 (1985).

## IV

The final issue is whether the trial court erred in denying the defendant's motion for acquittal. The defendant contends that the evidence against him was insufficient to support the jury's guilty verdict. He challenges in particular the sufficiency of the evidence to establish that he participated in the alleged robbery. We are not persuaded.

When a verdict is challenged because of insufficient evidence, the issue is whether " ' "the jury could have reasonably concluded, upon the facts established and

---

[13] The court instructed the jury as follows: "As I told you, you can't consider the indictment as evidence of anything . . . .

\* \* \*

"The State is not alleging that the Defendant intended to cause the death of the victim. That would constitute an intentional act of murder. In fact, the bill of particulars alleges Mr. Vinal shot [the victim] and not Mr. Avis."

the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985), quoting *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the light most favorable to sustaining the trial court's verdict. *State* v. *Williams,* 205 Conn. 456, 468, 534 A.2d 230 (1987); *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984); *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982); *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981). " ' "We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." ' " *State* v. *Plourde,* 208 Conn. 455, 458, 545 A.2d 1071 (1988), quoting *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987), and cases cited therein.

There was sufficient evidence at trial to support the jury's finding in this case. In addition to the defendant's confession, the state proved that the defendant, in the company of Vinal, whom he knew to be armed, followed the victim's car and persuaded the victim to stop by the side of the road. The jury could reasonably have disbelieved the defendant's story that he thereafter remained in his own car and fell asleep or passed out. The defendant's testimony that he saw Vinal throw a wallet into the river after the incident, his subsequent

misstatements to the police, and his flight from Connecticut, using a number of aliases, supported the inference that he was conscious of his guilt. Although the evidence against the defendant was in part circumstantial, the jury could nonetheless have found that the defendant was, beyond a reasonable doubt, guilty as charged. The trial court therefore did not err in denying the defendant's motion for acquittal.

There is no error.

In this opinion the other justices concurred.