LILLIAN MACK *v.* BERNARD LAVALLEY ET AL.
(AC 18196)

Lavery, Schaller and Dupont, Js.

Argued April 29—officially released October 5, 1999

*Michael S. Taylor*, with whom were *Brian P. Leaming* and, on the brief, *Daniel P. Scapellati* and *David G. Hill*, for the appellants (defendants).

*Brian W. Prucker*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendants, Bernard LaValley and Pauline LaValley, appeal from the judgment of the trial

court, rendered after a jury trial, in favor of the plaintiff, Lillian Mack, in this premises liability action. On appeal, the defendants claim that the trial court improperly (1) admitted into evidence deposition testimony of a plaintiff's witness and failed to redact the witness' opinion testimony contained in that deposition, (2) denied the defendants' motions to set aside the verdict and for judgment notwithstanding the verdict and (3) failed to reduce the economic damages award by the amount of collateral source payments received by the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On May 29, 1992, the plaintiff, a tenant of the defendants, was injured when she slipped and fell on the exterior stairs of the premises owned by the defendants. Thereafter, the plaintiff commenced a negligence action against the defendants seeking damages for her injuries. The plaintiff claimed that a defective and dangerous condition existed at the top threshold of the steps, which caused her to fall, and that the defendants knew or should have known of the condition and failed to make repairs.

At the close of the plaintiff's case-in-chief, the defendants filed a motion for a directed verdict, which the trial court denied. The defendants rested their case without presenting witnesses or evidence, and the jury returned a verdict in favor of the plaintiff. The defendants then filed motions to set aside the verdict and for judgment notwithstanding the verdict, which the court denied. This appeal followed. Other facts will be discussed where they are relevant to the defendants' claims.

I

The defendants first claim that the trial court improperly admitted the deposition testimony of a plaintiff's witness because there was insufficient evidence to

show that the witness was unavailable as required by Practice Book § 13-31. We disagree.

"The admissibility of a deposition into evidence under Practice Book § 248 [now § 13-31] is permissive in nature, leaving the ultimate determination to the trial judge. . . . On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference . . . [and] will be disturbed only upon a showing of clear abuse of discretion. . . . The party making the claim of error has the burden of showing that the court clearly abused its discretion." (Internal quotation marks omitted.) *Pelarinos* v. *Henderson*, 34 Conn. App. 726, 728–29, 643 A.2d 894, cert. denied, 231 Conn. 909, 648 A.2d 155 (1994).

Practice Book § 13-31 (a) provides in relevant part: "At the trial of a civil action . . . any part or all of a deposition . . . may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions . . . (4) The deposition of a witness . . . may be used by any party for any purpose if the judicial authority finds . . . (B) that the witness is at a greater distance than thirty miles from the place of trial or hearing, or is out of the state and will not return before the termination of the trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition . . . ."

The following additional facts are relevant to this claim. At trial, the plaintiff sought to introduce the deposition testimony of a witness, John Fitzgerald, an engineer deposed by both parties prior to trial, whom the plaintiff was unable to locate for the trial. The defendants objected to the admissibility of the deposition, claiming that the plaintiff had failed to establish the witness' unavailability. The defendants also requested

that if the deposition testimony was admitted, portions of the testimony be redacted.

The plaintiff's counsel then called a paralegal who works in his law office to testify as to the witness' unavailability. She testified that when she called the witness at his home in Westbrook she heard a message on his answering machine stating that he was unavailable, that he was in Florida and that he could be reached at a certain telephone number that was recited. She further testified that she telephoned the number in Florida several times, including the day of trial, and no one answered. The trial court found that there was no indication that the absence of the witness was procured by the plaintiff. The court further found that fair and reasonable efforts were made to locate the witness, who at the time was not within thirty miles of the place of the trial, and, therefore, that the plaintiff had established unavailability as required by Practice Book § 13-31.

Under the circumstances, we conclude that the trial court did not clearly abuse its discretion in finding that the plaintiff had established the witness' unavailability and had satisfied the requirements of Practice Book § 13-31 for the admission of the deposition testimony. The cases relied on by the defendants are inapposite and do not concern the admissibility of deposition testimony under Practice Book § 13-31. The defendants have failed to demonstrate that the trial court clearly abused its discretion in finding that the witness was at a distance greater than thirty miles from the place of trial, as set forth in the rules of practice. Therefore, their claim must fail.

The defendants next claim that the trial court improperly admitted the opinion testimony of the plaintiff's witness. We are not persuaded.

The following additional facts are relevant to this claim. After concluding that the plaintiff established the witness' unavailability for trial, the court addressed the issue of the witness' qualifications. The defendants claimed that the plaintiff failed to lay a foundation establishing the witness as an expert and, therefore, the testimony should have been excluded. The court agreed with the defendants that there was nothing in the testimony qualifying the witness as an expert. The court concluded that the witness could not testify as an expert, but found that "there is nothing to prevent [the witness] from being able to testify as an individual person, as a fact witness, as someone who has actually seen and observed circumstances that may be, in fact, relevant."

The trial court determined that the witness could testify as a fact witness because photographs of the stairs he had taken already had been introduced into evidence without objection and had been testified to by the plaintiff as depicting the stairs at the time of the accident. The court concluded that the witness could testify as to two things, namely, the steps being slippery and the fact that there was a portion of the threshold, that sloped away from the door toward the street.[1]

---

[1] A limited portion of the witness' deposition testimony was introduced into evidence. The portion introduced reads as follows:

"[Plaintiff's Counsel]: Mr. Fitzgerald, okay, on April 8th, 1993?

"[Witness]: Yes, that's when I went to the premises.

\* \* \*

"A. Yes, that's when I went to the premises. I felt or sensed the surface with my foot and pretty much understood what kind of results I'm going to take, which I would have done here. I would have felt the metal surface and then felt the painted metal surface which what confronted my comment in my notes that the sides were okay but worn off paint was slippery.

"Q. How about the footwear? Does that play any part in the slipperiness of the step?

"A. Yes.

"Q. Do you know what [the plaintiff] was wearing at the time of her fall?

"A. She had—she was wearing sneakers.

"Q. What type of footwear were you wearing?

These conditions are capable of being observed by lay-persons.

The defendants claim that the admission of the witness' opinion testimony was improper because (1) it essentially constituted expert opinion, (2) sufficient assurances of reliability were lacking because the defendants did not have an opportunity at trial to cross-examine the witness, (3) the witness' observations were not corroborated because they were too remote in time and there was no evidence that the condition that caused the plaintiff's fall was the same as that observed by the witness, and (4) the plaintiff's introductory comments to the venire panels that the witness was a professional engineer, along with the portion of the testimony that was admitted, left the jury to speculate as to the qualifications of the witness, thereby prejudicing the defendants.

"The trial court has broad discretion in the admission of opinion testimony; *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 718, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991); which necessarily includes broad discretion to ascertain if the testimony is supported by a proper foundation. . . . Accordingly, its determination is accorded great deference by this court." (Citation omitted.) *Amwax Corp.* v. *Chadwick*, 28 Conn. App. 739, 744, 612 A.2d 127 (1992). The trial court also has "broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only

---

"A. Probably a soft-soled shoe. The outer portion of the sill contained a significant slope.

"Q. Okay. Can you point me to the photograph which best depicts that slope?

"A. Probably exhibit six, which shows the outer portions sloping downward.

"Q. Downward away from the house?

"A. Away from the house.

"Q. Thank you, Mr. Fitzgerald."

upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 752, 680 A.2d 301 (1996).

The defendants first claim that the witness' testimony was not a proper lay opinion because it "should have been more properly characterized as expert opinion." The defendants, however, offer no authority or legal analysis in support of this assertion. We therefore decline to review this claim. *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993).

The defendants next claim that the testimony was improperly admitted without sufficient assurances of its reliability because the defendants did not have an opportunity at trial to cross-examine the witness. We disagree.

Our review of the transcripts reveals that while the defendants raised numerous claims concerning the admissibility of the deposition testimony at trial, they did not raise this claim at trial or in their motions to set aside the verdict and for judgment notwithstanding the verdict. "It is axiomatic that the trial court can be expected to rule only on those matters that are put before it. See *Lee* v. *Lee*, 174 Conn. 5, 7, 381 A.2d 529 (1977). With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. See *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989). 'To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge.' *Baker* v. *Cordisco*, 37 Conn. App. 515, 522, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995)." *Flewellyn* v. *Hempstead*, 47 Conn.

App. 348, 353, 703 A.2d 1177 (1997). Accordingly, we do not review this claim.[2]

The defendants next claim that the admission of the lay opinion was improper because the witness' observations were not corroborated in that they were too remote in time and there was no evidence that the condition that caused the plaintiff's fall was the same as that observed by the witness.

The witness' testimony was based on his personal observation of the area where the plaintiff fell. The trial court found that the testimony was relevant and properly admissible because photographs of the stairs taken by the witness were introduced into evidence by the plaintiff and testified to by the plaintiff as depicting the stairs at the time of the accident. Also, another witness testified at trial that he had observed the same condition on the premises as long as six months before the incident. The court, therefore, found that the deposition witness' observations, although occurring almost one year after the plaintiff's fall, were sufficiently reliable, and that the defendants' objection essentially concerned the weight to be accorded the testimony and not its admissibility. "Once a witness' competency is established, questions relating to any supposed lack of knowledge of the fact at issue go to the weight rather than the admissibility of the evidence." *Chouinard* v. *Marjani*, 21 Conn. App. 572, 581, 575 A.2d 238 (1990). We cannot conclude that the trial court abused its discretion in admitting the witness' opinion testimony.

---

[2] There is no indication that the defendants' counsel was not present at the taking of the deposition or that the defendants were precluded from cross-examining the witness at the deposition. Even if we were to review the defendants' claim, it would fail because Practice Book § 13-31 (a) provides that deposition testimony that would be admissible if the witness were present and testifying may be used in a civil action "against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . . ."

The defendants' final claim as to the admissibility of the opinion testimony is that the court's allowing the witness to testify as a fact witness, after he had been introduced to the venire panels as a professional engineer, "was prejudicial to the defendants because the jurors, naturally, would accord his testimony greater weight." The defendants essentially claim that the remarks to the jury panels and the substance of the witness' testimony combined to prejudice them, thereby necessitating a new trial. The defendants are unable to cite any case law that supports that argument. We are not persuaded.

The following additional facts are relevant to this claim. During the jury selection process, the plaintiff's counsel gave one venire panel the names of persons that he intended to call as witnesses in order to discern if any members of the panel knew the witnesses. Specifically, he stated: "We have an investigator in this case, a professional engineer by the name of John Fitzgerald, no relation to our firm. He will be providing certain engineering reports." He stated to a different venire panel: "There's also an engineer by the name of John Fitzgerald who may be providing testimony in this case." The jury was selected from those panels.

At trial, out of the presence of the jury, the trial court heard arguments from counsel and determined the admissibility of the witness' deposition testimony. The court concluded that the witness could not testify as an expert but that he could testify as a fact witness. When the jury was brought back into the courtroom, the plaintiff's counsel stated that he wanted to introduce a part of a deposition that took place on May 7, 1996, of a witness named John Fitzgerald. The trial court explained to the jury the procedure by which the testimony of someone who is not able to be in court is admitted into evidence. No mention was made of the witness' status as an engineer or that he was an expert

testifying in the case. In its charge to the jury on expert testimony, the trial court stated: "The expert that we're—testimony that we're dealing with here are medical reports that you will have before you. In weighing the credibility of the experts who in this particular case furnished reports, that is the doctors and medical suppliers, you should apply the same standards to which any other witness is subjected."

For this court to accept the defendants' claim that the statements made to the venire panels that the witness was an engineer were prejudicial and that the jury accorded the witness' testimony more weight would require improper speculation. We cannot speculate, as the defendants would have us do, as to how and why the jury arrived at its verdict. We note that the defendants did not ask for a curative instruction with regard to the remarks made to the venire panels about the witness. "The [defendants], therefore, presumably did not regard those remarks . . . as seriously prejudicial at trial." *State* v. *Chasse*, 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Furthermore, the court stated to the jury in its final charge that the only experts testifying were the doctors and medical suppliers. "Absent evidence to the contrary, we presume that the jury acted in accordance with the instructions given by the court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 46, 717 A.2d 77 (1998). We therefore reject the defendants' claim.

"Moreover, it is well settled that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Citation omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*,

supra, 238 Conn. 752. The defendants have failed to meet their burden of demonstrating that the allegedly improper evidentiary rulings were likely to have affected the result.

## II

The defendants next claim that the trial court improperly denied their motions to set aside the verdict and for judgment notwithstanding the verdict because there was insufficient evidence to support a finding of negligence. We disagree.

"The standard for reviewing the denial of motions to set aside the verdict and for judgment notwithstanding the verdict on evidentiary grounds is clear. Our review of the trial court's refusal to [grant the motions] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 277, 698 A.2d 838 (1997).

The defendants claim that the evidence was insufficient to show that a defective condition existed on the stairs because there was no testimony concerning the portion of the threshold that the plaintiff was standing on when she fell. The defendants claim that because there was insufficient evidence of a defective condition, it follows that there was insufficient evidence of notice of that condition. They further claim that there was insufficient evidence to support the finding of proximate cause because there was no testimony that the area of the step with the worn-off paint caused the plaintiff to fall and, therefore, there was no evidence

of a causal relation between any alleged defect and the plaintiff's fall.

"Connecticut subscribes to the common-law view that a landlord is under no obligation or liability to the tenant for personal injuries due to the defective condition of the demised premises or the lack of repair of defects therein in the absence of an agreement, express or implied to the contrary. . . . One of the many exceptions to this rule, however, is where the landlord retains control of a portion of the demised premises. In such a case the landlord must use reasonable care to keep that portion of the premises in a reasonably safe condition. . . . In order to demonstrate a breach of this duty the plaintiff must show that the defendants had actual knowledge of the defect or that they were chargeable with constructive notice of it, because, had they exercised a reasonable inspection of the premises, they would have discovered it." (Citations omitted.) *Pollack* v. *Gampel*, 163 Conn. 462, 468, 313 A.2d 73 (1972).

To prove her negligence claim, the plaintiff also had to demonstrate that the defendants' negligence was the proximate cause of her injuries. "[T]he test of proximate cause is whether the [defendants'] conduct is a substantial factor in bringing about the plaintiff's injuries . . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection." (Internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 182, 646 A.2d 195 (1994). "The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations

omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611, 662 A.2d 753 (1995).

We conclude that the evidence adduced at trial was sufficient to support the jury's determination that the defendants were negligent. The plaintiff alleged that a defective condition existed on the exterior steps and that she fell on them because of a worn metal plate affixed to the threshold step and an uneven surface that sloped and was unusually slippery. The plaintiff introduced as exhibits photographs, which she testified were a fair and accurate representation of the steps in question as they existed at the time of her fall. The photographs showed a worn metal sill and a slope to the steps. A witness who lived with the plaintiff on the premises testified that the condition of the stairs as shown in the photographs existed for at least six months prior to the plaintiff's fall and that the stairs were slippery. Another witness also testified that the metal surface where the paint had worn away was slippery and that the step sloped downward. Although the plaintiff did not testify as to the exact location of the step she was on when she fell, she testified that when she stepped on the top threshold of the steps she slipped and fell.

There also was evidence that the defendant Bernard LaValley was on the property on a number of occasions, that he undertook responsibility for constructing and maintaining other stairs, and that two years prior to the plaintiff's fall he painted the sill up to the threshold but not the threshold. He testified that the metal sill was not slippery.

On the basis of the evidence, the jury reasonably could have concluded that the defendants had constructive notice of the defective condition of the stairs where the plaintiff fell, that they were negligent in failing to

keep the premises in a reasonably safe condition and that their negligence was a proximate cause of the plaintiff's injuries. "The right to a jury trial is fundamental in our judicial system, and . . . the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [persons] passed upon by the jury and not by the court. *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 (1970)." (Internal quotation marks omitted.) *Donahue* v. *State*, 27 Conn. App. 135, 140, 604 A.2d 1331 (1992). The trial court properly denied the defendants' motions.

## III

The defendants' final claim is that the trial court improperly failed to reduce the economic damages award by the amount of collateral source payments received by the plaintiff. We are not persuaded.

The following additional facts are necessary to our resolution of this claim. The jury returned a verdict in favor of the plaintiff and awarded economic damages in the amount of $37,000 and noneconomic damages in the amount of $75,000 for a total damages award of $112,000. The jury, however, found the plaintiff to be 30 percent negligent and, therefore, $33,600 was deducted from the total award as the amount attributable to the plaintiff's percentage of negligence, thereby reducing the total damages award to $78,400.

After the jury returned its verdict, the court held a hearing to determine the amount, if any, of the damages award that should be reduced on account of collateral benefits received by the plaintiff. Both parties stipulated that the amount of $4275.15 was received by the plaintiff from a collateral source in connection with a hospital bill. The defendants requested the trial court to deduct

this amount from the economic damages award or, in the alternative, that 70 percent of $4275.15, or $2992.61, the amount representing the collateral source less the portion attributable to the plaintiff's percentage of negligence, be deducted from the economic damages award.

The trial court concluded that no reduction in the economic damages award was warranted by the applicable statute, General Statutes § 52-225a (a). The trial court explained that because the plaintiff had received the amount of $4275.15 from an outside source that was less than the amount of the reduction in the plaintiff's economic damages attributable to her percentage of negligence, namely $11,100, the award should not be reduced. On appeal, the parties do not dispute the amount the plaintiff received in collateral benefits or that the amount received was from a collateral source as defined by General Statutes § 52-225b.

The issue we must decide is whether the defendants were entitled to a reduction in the economic damages award, which requires an interpretation of § 52-225a. This court is not aware of any case resolving this issue, nor have the parties offered one. In deciding this issue, we are guided by well defined principles of statutory interpretation. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *Alvarado* v. *Black*, 248 Conn. 409, 414, 728 A.2d 500 (1999). "[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226, 720 A.2d 235 (1998); *State* v. *Albert*, 50 Conn. App. 715, 719, 719 A.2d 1183 (1998), cert. granted in part, 247 Conn. 954, 723 A.2d 810 (1999). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circum-

stances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated. . . . *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133, 717 A.2d 747 (1998).

"Moreover, principles of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991). The court must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 52 Conn. App. 69, 78–79, 726 A.2d 604 (1999).

We first look to the language of the statute. Section 52-225a (a) provides in relevant part: "In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987 . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for . . . (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h."

"Prior to the enactment of § 52-225a in 1985, Connecticut adhered to the common-law collateral source rule, which provides that 'a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him. . . . The basis for our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source.' . . . In 1985, however, the legislature by enacting Public Acts 1985, No. 85-574 (P.A. 85-574), abolished the common-law collateral source rule in medical malpractice actions." (Citation omitted.) *Alvarado* v. *Black*, supra, 248 Conn. 416. In 1986, § 52-225a was extended by No. 86-338, § 4, of the 1986 Public Acts, thereby abolishing the common-law collateral source rule in all personal injury actions. Id., 417. "The language and legislative history of § 52-225a clearly indicate that § 52-225a was intended to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments." Id.

Here, the defendants claim that § 52-225a does not prohibit a collateral source deduction unless and until the amount of a collateral source exceeds the deduction from the economic damages award due to the plaintiff's comparative negligence. Thus, they claim that they are entitled to a reduction in the economic damages award of $4275.15, the amount agreed to by the parties as representing the collateral source payments received by the plaintiff, less 30 percent attributable to the plaintiff's comparative negligence.

The trial court, in a comprehensive and well reasoned oral decision, set forth its reasoning for its decision. The court explained that of the $37,000 awarded the plaintiff in economic damages for medical expenses, $11,100 was deducted on account of the 30 percent

attributable to the plaintiff's own negligence. Thus, the plaintiff actually received $25,900 from the defendants, resulting in a shortfall to the plaintiff. The court reasoned that if $4275.15 were added to $25,900, the plaintiff would still lack approximately $7000.

The trial court explained the statute at issue was designed to prevent double recovery by a plaintiff. Here, because the plaintiff was receiving less than 100 percent of her economic damages, there was no double recovery. The court stated that the only rational way to read the statute is that it absolutely prohibits a plaintiff from collecting more than the total amount of economic damages from the combination of all sources that are available, but the statute allows individuals the benefit of their own prudence in providing themselves with a collateral source.

We agree with the trial court's interpretation of the statute. The plain language of the statute prohibits a reduction in the economic damages award for "that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence . . . ." General Statutes § 52-225a (a) (2). We interpret § 52-225a (a) to mean that when the amount of the collateral sources received by the plaintiff is less than or equal to the amount of the reduction in the claimant's economic damages attributable to the claimant's own negligence, there shall be no collateral source reduction in the award.

This interpretation comports with the purposes the legislation was designed to achieve. The statute was enacted to abolish the common-law collateral source rule that permitted a plaintiff to receive economic damages from a defendant along with collateral source payments, thereby resulting in a possible double recovery. The legislation reflects "the understanding that the entitlement of an injured party to be made whole does not

include an entitlement to a double recovery for the same loss." *Nash* v. *Yap*, 247 Conn. 638, 649, 726 A.2d 92 (1999). Our Supreme Court explained the competing concerns underlying collateral source recovery in *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 23–24, 699 A.2d 964 (1997) (en banc). "The first is that a tortfeasor should not be rewarded by collateral sources that have benefited an injured party. This principle recognizes the social value in making the tortfeasor pay the injured party even for already 'compensated' losses in order to prevent a windfall to the tortfeasor . . . and to fulfill the general tort policy of deterring similar tortfeasors from wrongful conduct. . . . The second, competing principle is that a litigant may recover just damages for the same loss only once. The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste." (Citations omitted.) Id.

Here, the statute as written reflects an intention by the legislature not only to prohibit a double recovery by a plaintiff, but also to provide that in a situation where an award already is reduced by an amount attributable to a plaintiff's percentage of negligence, a defendant is not to receive a benefit or windfall of a further reduction in the award on account of benefits received by a plaintiff due to the plaintiff's prudence. The legislature abolished the common-law collateral source rule when it enacted § 52-225a (a), and "[i]t is a rule of statutory construction that statutes in derogation of the common law should be strictly construed so as not to exceed, modify or enlarge [their] provisions beyond [their] scope by the mechanics of statutory construction." *Brennan* v. *Burger King Corp.*, 46 Conn. App. 76, 82–83, 698 A.2d 364 (1997), aff'd, 244 Conn. 204, 707

A.2d 30 (1998). Our construction of the statute would not frustrate or enlarge its intended purpose.

We conclude that the trial court properly applied the provisions of § 52-225a (a) and denied the defendants' motion for a collateral source reduction in the award.

The judgment is affirmed.

In this opinion the other judges concurred.