KATHLEEN M. CORCORAN *v.* JESSE MCCOY TAYLOR
(AC 20571)

Landau, Spear and Dupont, Js.

Argued April 5—officially released August 28, 2001

*Frank J. Kolb, Jr.*, with whom, on the brief, was *William E. Skiptunas*, for the appellant (plaintiff).

*Kerry R. Callahan*, with whom was *Shea S. Kinney*, for the appellee (defendant).

*Opinion*

LANDAU, J. The plaintiff, Kathleen M. Corcoran, appeals from the judgment rendered by the trial court in this personal injury action following a trial to the jury. On appeal, the plaintiff claims that (1) the court improperly (a) reduced the jury's economic damages award to zero because the amount of collateral source payments she received greatly exceeded the economic verdict and (b) refused to submit her proposed interrog-

atories to the jury, (2) General Statutes § 52-225a[1] is unconstitutionally vague as applied to her and (3) defense counsel's closing argument was unduly prejudicial.

The following facts are relevant to our resolution of this appeal. On February 9, 1995, the parties were involved in a motor vehicle accident in East Haven as they were traveling north on Interstate 95. As a result of the collision, the plaintiff commenced an action in one count, claiming injuries to her head, shoulders, back and knee, as well as emotional disorders, as a result of the defendant's alleged negligence. The case was tried in November and early December, 1999.[2] There apparently was no great question as to who caused the accident, but the proximate cause of the

---

[1] General Statutes § 52-225a provides in relevant part: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987 . . . wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

[2] Prior to trial, the defendant filed an offer of judgment in the amount of $100,000.

plaintiff's alleged injuries was vigorously contested. The plaintiff submitted a summary of her claimed medical bills, which totaled approximately $67,000. The jury awarded the plaintiff $37,500 in economic damages and $40,000 in noneconomic damages for a total verdict of $77,500.

The plaintiff filed motions to set aside the verdict and for additur, which were denied by the court. Thereafter, the court held a collateral source hearing. During the hearing, counsel for the parties agreed that the amount paid by collateral sources was four times the economic damages awarded by the jury.[3] Counsel for the plaintiff argued that because the verdict as to economic damages was a general verdict, it was not possible to determine what portion of the economic damages was for costs incurred and what part was for future medical expenses, and that a new trial as to damages was necessary. The court ruled that the collateral source payments had to be taken into account and deducted them from the economic damages, acknowledging that doing so reduced the plaintiff's judgment by almost half. The plaintiff appealed.

I

We disagree that the court improperly (1) reduced the jury's economic damages award and (2) refused to submit the plaintiff's proposed interrogatories to the jury.

---

[3] The following colloquy between the court and counsel took place during the collateral source hearing:

"Defense Counsel: So, my position is, and perhaps we should talk further and submit a stipulation to the court, that an evidentiary hearing on the amount of the collateral sources would essentially be pointless because both sides, I believe, recognize that if a collateral source reduction is to take place, the amount of the collateral source is four times the amount of the economic damages that the jury awarded.

"The Court: Do you agree to that?

"Plaintiff's Counsel: Yes, that is correct."

## A

The plaintiff's first claim is that the court improperly reduced her economic damages on the basis of her collateral source benefits. This claim requires us to interpret § 52-225a and apply it to the facts of this case. "Statutory construction is a question of law and therefore our review is plenary. . . . [T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Citations omitted; internal quotation marks omitted.) *Mack* v. *LaValley*, 55 Conn. App. 150, 165–66, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999).

In 1986, our legislature abolished the common-law collateral source rule in personal injury cases to prevent a plaintiff from receiving a double recovery for injuries. Id., 167. Section 52-225a (a) provides, in part, that in a civil action sounding in tort, where the plaintiff seeks to recover damages resulting from personal injuries that occurred after October 1, 1987, and where the jury determines liability and awards damages to compensate the plaintiff, "the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts" paid by collateral sources. "The language and legislative history of § 52-225a clearly indicate that § 52-225a was intended to

prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments." (Internal quotation marks omitted.) Id.

Here, the plaintiff agreed with the defendant that she had received payments from collateral sources for her injuries that were four times the amount of the jury's award of economic damages. The court reduced the amount of the economic verdict to zero because the amount paid by collateral sources greatly exceeded the economic damages the jury awarded. On appeal, the plaintiff relies on *Mack* v. *LaValley,* supra, 55 Conn. App. 150, specifically, in which this court stated: "We interpret § 52-225a (a) to mean that when the amount of the collateral sources received by the plaintiff is less than or equal to the amount of the reduction in the claimant's economic damages attributable to the *claimant's own negligence,* there shall be no collateral source reduction in the award." (Emphasis added.) Id., 168. The facts of *Mack* do not apply to the facts of this case, where there was no reduction in the verdict due to the plaintiff's negligence. The plaintiff also relies on *Fleming* v. *Garnett,* 231 Conn. 77, 646 A.2d 1308 (1994). *Fleming* also is not applicable because that case involved multiple defendants, some of whom settled the claims against them prior to trial, and a claimant who was partially negligent. This case, unlike *Fleming,* does not concern the pro rata distribution of the jury's verdict.

The court, therefore, properly reduced the jury's economic verdict, and the result is consistent with the legislative intent to prevent plaintiffs from obtaining double recoveries.

### B

The plaintiff's second claim is that the court abused its discretion by refusing to submit certain interrogato-

ries[4] to the jury because, she claims, the answers would have distinguished past from future economic losses, which distinction was relevant to the collateral source hearing. The plaintiff's claim is unfounded.

Practice Book § 16-18 provides in relevant part: "The judicial authority may submit to the jury written interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. . . ." The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. *Gaulton* v. *Reno Paint & Wallpaper Co.*, 177 Conn. 121, 125, 412 A.2d 311 (1979). "[T]his rule is subject to the exception that where the complaint contains two or more counts . . . the defendant has the right to save himself from the implication

---

[4] The plaintiff requested that the following interrogatories be submitted to the jury:

"1. Was the defendant negligent in any one or more of the respects alleged in the complaint of the plaintiff?

"2. If the answer to question one is in the affirmative, was the negligence of the defendant a proximate cause of the collision between the vehicle driven by the plaintiff, Kathleen Corcoran, and the tractor trailer driven by the defendant, Jesse McCoy Taylor?

"3. If the answers to questions one and two are both in the affirmative, then you will answer the following interrogatories:

"a. Was the neck pain proximately suffered by the plaintiff caused [by the] collision?

"b. Did the plaintiff suffer injuries to her head, and were the injuries proximately caused by the collision?

"c. Did the plaintiff suffer shoulder pain as a result of the collision?

"d. Was the pain suffered by the plaintiff in the knee proximately caused by the collision?

"e. Was acute anxiety reaction proximately caused by the collision?

"f. Did the plaintiff experience [severe] emotional trauma as a result of the accident?

"g. Has the plaintiff lost time from work as a result [of] the accident?

"h. Will the plaintiff suffer from decreased earning capacity as a result of all of her injuries suffered in the accident?

"i. Were the injuries not mentioned above as set forth by the evidence presented sustained by the plaintiff as a result of the accident?"

of a general verdict by seeking from the jury answers to apt and proper interrogatories." (Internal quotation marks omitted.) Id., 126. We require only that the interrogatories provide a "means by which the jury may record the findings of fact which form the basis for [the] verdict." Id., 127. "In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. *State v. Weidenhof,* 205 Conn. 262, 278, 533 A.2d 545 (1987)." *Daley v. Aetna Life & Casualty Co.,* 249 Conn. 766, 795, 734 A.2d 112 (1999).

In this case, the plaintiff brought a one count cause of action against the defendant. It was therefore within the court's discretion to deny the plaintiff's request to submit interrogatories to the jury. The interrogatories in question asked the jury to decide whether the defendant was negligent, whether his negligence was responsible for the accident and whether the plaintiff's claimed injuries were proximately caused by the accident. None of the interrogatories asked the jury to differentiate between past and future economic damages, which is the only issue relevant to the collateral source hearing. The court's refusal to submit the interrogatories to the jury, therefore, was not an abuse of discretion. Furthermore, the exercise of the court's discretion was not harmful to the plaintiff, as answers to her interrogatories would not have protected her from the consequences of the collateral source hearing.

## II

The plaintiff's third claim is that § 52-225a is unconstitutionally vague as it applies to her because it does not require a jury to make specific awards for past economic damages and future economic damages. The plaintiff, however, has not identified any language in the statute that is impermissibly vague, and she has not

identified any right guaranteed by the state or federal constitution that the statute allegedly violates.

"[A] validly enacted statute carries with it a strong presumption of constitutionality, [and] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, supra, 231 Conn. 88. The plaintiff has failed to meet her heavy burden. In her brief, the plaintiff makes general reference to the void for vagueness doctrine as found in 73 Am. Jur. 2d, Statutes § 346 (1974). She, however, cites no Connecticut or federal law in support of her position and provides no legal analysis as to her constitutional claim. This court does not review claims where the plaintiff cites no law and provides no analysis beyond a mere statement of a claim. *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 100–101, 709 A.2d 14 (1998), citing *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).[5]

### III

The plaintiff's final claim is that the defendant's counsel, during his final argument, made comments that were prejudicial to her cause of action and caused the jury to view her claims unfairly. The plaintiff's claim is based on the defense counsel's use of terms such as "litigation mode," "litigation format" and "in litigation now." The defendant argues that the plaintiff waived

---

[5] Our Supreme Court rejected a previous void for vagueness challenge to § 52-225a in *Fleming* v. *Garnett*, supra, 231 Conn. 87. We recognize that the specific challenge in that case was different from the challenge presented here and that the statute has been modified slightly since that time, but the plaintiff has failed to make any reference to the previous challenge in her brief or to distinguish *Fleming*.

this claim by failing to preserve it during trial. We agree with the defendant.

The plaintiff's counsel did not object to the remarks at the time they were made or at the conclusion of the argument, and he did not request a curative charge. See *State* v. *Negron*, 221 Conn. 315, 324, 603 A.2d 1138 (1992); *State* v. *Lucas*, 63 Conn. App. 263, 277, 775 A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001). The plaintiff therefore did not preserve her claim of prejudice for appellate review. No constitutional issue is claimed, and we need not review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] See *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). We, therefore, conclude that the plaintiff has waived her claim and decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] *Golding* is applicable to civil actions. See *Budlong* v. *Nadeau*, 30 Conn. App. 61, 64, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290, cert. denied, 510 U.S. 814, 114 S. Ct. 62, 126 L. Ed. 2d 31 (1993).