[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In the above-entitled action, the court hereby renders its verdict for the plaintiffs, Mr. Mrs. Pilch, as against Stop Shop (the defendant).
 FACTS
In this case, Mrs. Marie Pilch (the plaintiff) and her husband, Mr. CT Page 14035 John Pilch, bring a two count complaint against the defendant grocery store, in which the plaintiff makes a premises defect claim in count one and Mr. Pilch makes a claim for loss of consortium in count two. The plaintiff alleges that the negligence of the defendant proximately caused her to fall in a puddle of soda on its floor and to suffer certain injuries. The defendant denies the allegations in each count and claims, by way of special defense, that the plaintiff's own contributory negligence proximately caused her alleged injuries when she failed to keep a proper lookout for her own safety and otherwise failed to act as a reasonably prudent person.
There was a two day trial before this court on July 19 and July 30, 2001. At the trial, it was undisputed that the defendant was in possession of the premises in question and that the plaintiff was in the store as an invitee. In rendering its verdict, the court takes these undisputed circumstances into account and in addition makes the following findings of fact. The plaintiff was fifty-four years old on August 30, 1996 when she decided to shop at the defendant's supermarket in Danbury. While at the store, she walked through the aisles using a shopping cart to carry her groceries. She eventually got in a check out line behind three or four people and as she waited to pay the cashier, she looked in her cart and realized that she had forgotten to pick up bagels. At this point, the plaintiff left her cart in line and walked to the bakery shop. As she walked she did not notice any spills on the floor. It was clean and dry. The plaintiff took a minute or less to walk from her cart to her destination. After making her choice, she placed her bagels in a plastic bag and retraced her steps to the register line.
At some unknown point after the plaintiff selected her bagels and before she reached the area near her shopping cart, a two liter bottle of Sprite soda came to rest on the floor in the area between the register aisle where the shopping cart was left and the "end cap" display where the Sprite soda bottles were kept. The aforementioned register aisle and the end cap display were more or less parallel with each other. One-half to two-thirds of the clear liquid contents of the Sprite bottle emptied onto the floor into a puddle which was approximately three feet wide. Further, at some unknown point prior to when the plaintiff reached the wet area, Mrs. Linda Coutts, one of the defendant's employees, noticed the spill and immediately went to a store intercom and called a porter to mop up the liquid.
While in route to the intercom, Coutts neither took it upon herself nor requested another store employee to place warning cones near the wet spot, clean the area with paper towels or remain near the puddle in order to direct customer traffic away from it. In addition, there is no evidence that Coutts used the intercom to announce the presence of the CT Page 14036 spill to customers. After Coutts called a porter on the intercom, she returned the register where she had been working before she discovered the wet spot. When Coutts was at her register, she heard the plaintiff yell. Approximately two to five minutes had elapsed between the time Coutts called for a porter and the time she heard the plaintiff scream.
When the plaintiff was walking back to her shopping cart from the bakery shop, she did not see anything out of the ordinary. She was unaware of the spilled liquid on the floor, how long it had been there and how it got there. The interval between the time she left her shopping cart and the time she reached the wet spot was approximately three minutes. When the plaintiff reached the wet area, she walked into it, lost her footing and fell to the floor. Immediately after her fall, she was approached by the store manager, Art Sousa, as well as Coutts. Shortly thereafter, a porter arrived with a mop. Both Sousa and Coutts offered to assist the plaintiff by calling an ambulance and her husband. The plaintiff refused the ambulance, but did agree that her husband should be called. When she was on the floor, the plaintiff noticed the near empty soda bottle on the floor and felt pain in her left foot, her right knee, head and back. Her foot became severely swollen and was, in her mind, the most significant injury she sustained.
The plaintiff was subsequently picked up by her husband and taken to the Danbury Hospital emergency room where she was treated for a broken left foot. Her treating physician, Dr. Thomas Nipper, took x-rays of various areas of her body, prescribed pain medication and fitted her with crutches and a cast which she wore for six weeks. The plaintiff did not complain about a knee problem at the hospital and was not treated for one.
She next treated with Dr. Daniel Fish, an orthopedic surgeon, four days after her the accident. Approximately ten weeks later, she made her first complaint to Dr. Fish about her right knee. He recommended physical therapy for her broken foot as well as shoe insert appliances. He also diagnosed her as having a torn meniscus in the knee and suggested that she "may" need knee surgery at "some point" in her lifetime. The plaintiff also treated with Dr. Ralph Manfredi, a chiropractor, for pain she felt in her low back. She had been seeing him between 1989 and the date of the accident for various injuries to her upper and lower back, her right knee and her neck. These pre-accident injuries were the result of a 1972 incident in which she hurt her back when she attempted to physically stop a moving automobile in the driveway of her home; a 1989 car accident in which she again hurt her back when a vehicle she was operating was rear-ended; and a 1995 incident in which she injured her neck and upper back when she fell down a flight of stairs at an attorney's office. The plaintiff also received treatment in 1993 from CT Page 14037 Dr. Randy Trowbridge, a pain management specialist, for bone density problems related to menopause and further treatment from him for a 1995 right knee injury.
As a result of the broken foot, the plaintiff suffers intermittent pain and swelling in her left foot. In addition, she is now limited in her choice of footwear and clothing, and is unable to participate to the extent she did prior to the accident in activities such as gardening, dancing, athletics and playing with her grandchildren. As a result of the foot injury, the plaintiff has also incurred medical expenses.
Additional facts about the plaintiff's medical condition and treatment, the consortium claim made by Mr. Pilch and other relevant matters will provided as necessary.
 LAW
The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury.Catz v. Rubenstein, 201 Conn. 39 (1986). In an ordinary civil case, such as this one, the party making a claim has the obligation to prove the elements of the claim by a preponderance of the evidence. Darrow v.Fleischner, 117 Conn. 518 (1933). As indicated previously, there is no dispute that the defendant in this case was in possession of the premises and that the plaintiff was an invitee in the grocery store at the time of the August 30, 1996 accident. The defendant therefore owed duty to the plaintiff to maintain the premises in a reasonably safe condition and to warn her about dangerous conditions she could not reasonably be expected to discover. "A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . ." (Citations omitted.) Morin v. Bell Court CondominiumAssn., Inc., 223 Conn. 323, 327 (1992).
The plaintiff in this case has proven by a preponderance of the evidence that the defendant breached its duty to her. The presence of clear soda on the floor in an area of customer traffic was obviously a dangerous condition which the defendant had a duty to correct or about which the defendant had a duty to warn the plaintiff. Further, it is unreasonable to expect the plaintiff to have discovered the premises defect in question. The spill was not present when the plaintiff first walked through the area where it had been seen by the defendant's employee, Coutts. Additionally, the defect was created before the plaintiff slipped and fell. During the time the plaintiff walked from and to her shopping cart, the credible evidence establishes that she was CT Page 14038 careful for her own safety and aware of her surroundings. Since the plaintiff did keep a proper lookout and acted as a reasonably prudent person under all the circumstances, the defendant has failed to prove its special defense.
The plaintiff can only recover if the defendant had actual or constructive notice of the specific premises defect long enough to take corrective measures or other suitable precautions. White v. EFConstruction Co., 151 Conn. 110 (1963). Further, actual or constructive notice to an employee in the course or scope of employment is considered to be notice to the employer under our law. The Appellate Court has said that "[w]hether the defendant had . . . notice of [the] condition turns on whether the condition existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it." Gulycz v. Stop Shop Cos.,29 Conn. App. 519, 521 (1992).
The defendant, through its employee Coutts, had actual knowledge of the spilled soda and had two to five minutes to remedy the defect or to warn the plaintiff about the dangerous defect. Coutts had sufficient time to stand by the puddle and redirect customer traffic, set up warning cones, clean up the liquid with paper towels or ask other store employees to do any of these things. She also had an adequate opportunity to warn the plaintiff about the defect by announcing its existence over the store intercom. When Coutts failed to take any of these or other actions, the defendant, through her, breached its duty to correct the defect or to warn the plaintiff about its existence.
The plaintiff, having proven that the defendant breached its duty to correct the dangerous defect or to warn her about its presence, can only recover damages for injuries which were proximately caused by the defendant's breach of duty. "The test of proximate cause is whether the . . . conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. " (Internal quotation marks omitted.)Mack v. Lavalley, 55 Conn. App. 150, 162 (1999) quoting Grayson v.Wofsey, Rosen, Kweskin Kuriansky, 231 Conn. 168, 182 (1994). The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. Doe v. Manheimer,212 Conn. 748, 767 (1989).
The plaintiff has proven by a preponderance of the evidence that the defendant's negligent acts on August 30, 1996 proximately caused her to suffer various economic and non-economic damages as those terms are defined in General Statutes § 52-572h. There is credible documentary CT Page 14039 evidence that she incurred various pecuniary medical expenses related to her foot injury. The plaintiff, however, specifically disavowed any claim to damages for lost earnings or lost earning capacity. In addition to her pecuniary losses, the plaintiff experienced nonpecuniary losses. For example, she suffered pain related to the broken foot and suffered a five percent permanent, partial disability to it, as established by the credible expert testimony of Dr. Peter Barnett, an orthopedic surgeon, who reviewed her medical records. In addition to the pain and suffering the plaintiff experienced, she is also, as previously mentioned, diminished in her capacity to engage in various endeavors and to enjoy life's activities.
The plaintiff has failed, however, to prove by a preponderance of the evidence that the injuries to her right knee, her low back and her neck were the proximate result of any negligent acts related to the accident. The plaintiff, as previously indicated, suffered a plethora of injuries to her back, right knee and neck in the years prior to her slip and fall in the defendant's grocery store. These physical problems were compounded by several other incidents which occurred in the years following the August 30, 1996 accident. For example, the plaintiff subsequently injured her back while entering her car, hurt it again while lifting luggage at an airport and injured it yet a third time while using her vacuum cleaner.
Our Supreme Court has said that a plaintiff is "entitled to recover full compensation for all damage proximately resulting from the defendant's negligence, even though [her] injuries are more serious than they would otherwise have been because of pre-existing physical or nervous conditions." Flood v. Smith, 126 Conn. 644, 647 (1940). In this case, however, the plaintiff's claimed injuries to her upper and lower back, right knee and neck were not proximately caused by the defendant's negligent acts of August 30, 1996. The problems with the plaintiff's lower and upper back, as well as the problem with her neck, were the result of the numerous mishaps she experienced both before and after her slip and fall in the supermarket. Further, Dr. Barnett's testimony establishes that the plaintiff's right knee problem is the result of a degenerative meniscus tear which is most commonly found in people, like the plaintiff, who are over the age of forty. The difficulties the plaintiff experienced with her lower and upper back, her right knee and her neck were neither proximately caused nor exacerbated by her fall in the defendant's store. Since the plaintiff's knee injury is not the proximate result of her fall, it is unnecessary for the court to consider her claims regarding future knee surgery as an element of damages.
The plaintiff's husband, Mr. John Pilch, alleges a loss of consortium in count two of the complaint. In this state "a cause of action for the CT Page 14040 loss of consortium is derivative of the injured spouse's cause of action. . . ." Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 563
(1989). Our Supreme Court has said that consortium "encompass[es] the services and/or the financial support of a spouse, and the variety of intangible relations which exist between spouses living together in marriage." Id., 553, quoting Hopson v. St. Mary's Hospital, 176 Conn. 485,487 (1979). The plaintiff's husband, Mr. Pilch, has proven his derivative consortium claim by virtue of the fact that his wife has prevailed in her personal injury claim, but has failed to prove the element of damages by a preponderance of the evidence. The court finds that there is no credible evidence that Mr. Pilch's loss of consortium proximately resulted in an injury. Despite this failure to prove the element of damages, "the fact that a technical legal injury ha[s] been done . . . entitle[s] the plaintiff to at least nominal damages." (Citations omitted.) Keller v.Carone, 138 Conn. 405, 406-07 (1951). Therefore, the court will award damages to Mr. Pilch.
 CONCLUSION
The court, having found for the plaintiff and Mr. Pilch regarding the issue of liability, awards as fair, just and reasonable damages the following amounts:
1. The plaintiff is awarded $5,000 in economic damages and $20,000 in noneconomic damages for a total of $25,000.
2. Mr. Pilch is awarded $1.00 in economic damage and $1.00 in noneconomic damages for a total of $2.00.
White, J.