[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried to the court on May 30, 2002. After considering the evidence and the arguments of the parties, the court issues this decision. For the reasons set forth below, the court finds the issues in favor of the defendants.
 I. PROCEDURAL BACKGROUND
The plaintiff, Richard Mitchell, commenced this action by a one count complaint, dated May 14, 1999. He alleges that, on and prior to June 12, 1997, the defendant, Arlene Covone, was the owner of an apartment house located at 170 Main Street in Deep River, Connecticut. Mitchell alleges that he was a tenant there, in a second floor apartment. The only entrance and exit to the apartment was an exterior wooden stairway, leading from the ground to a landing outside the door to his apartment. Mitchell also alleges that the stairway was controlled and maintained by the defendants, Frank and Arlene Covone.
On or about June 12, 1997, Mitchell alleges that he was going down the stairway when he "stepped upon a tread of the stairway which, by reason of its defective condition rocked forward causing him to slide down the stairway," as a result of which he sustained personal injuries. (Complaint, ¶ 5.)
Mitchell alleges that the defendants were negligent in one or more of, the following ways, causing him to be injured:
"(a) The treads of the stairway were worn and out of repair and, hence, were in a defective and dangerous condition;
(b) The stairway was at a sharp and steep angle in violation of the State of Connecticut Building Code;
(c) The stairway was not painted or repaired so as to prevent the wood from becoming rotten, cracked and dangerous; CT Page 8861
(d) The stairway violated the provisions of the Connecticut Basic Building Code in that there was no handrail on one side of the stairway;
(e) They failed to replace the missing handrail along one side of the stairway;
(f) They did not replace the hazardous, defective and rotten stairway treads;
(g) They violated Section 104.3 of the Connecticut Basic Building Code dated 1978; which states as follows: `104.3 owner responsibility: the owner or the owners' designated agent shall be responsible for the safe and sanitary maintenance of the building or structure and its means of egress facility at all times.'
(h) They failed to warn the Plaintiff of the aforesaid conditions." (Complaint, ¶ 6.)
In response, in their answer, the defendants admitted that Mitchell was a tenant, that the stairway was the only method of access to the apartment, and that they controlled the stairway. They deny that the stairway was defective and the other salient allegations of the complaint or leave Mitchell to his proof. By way of special defense, they allege that any injuries suffered by Mitchell were due to his own negligence, in that he failed to observe existing conditions, failed to make full use of his faculties, failed to keep a proper lookout, failed to watch where he was going, and failed to observe and avoid a condition of which he had or should have had knowledge.
At trial, Mitchell presented his own testimony, and that of three experts, Dr. Edward Tucker, a neurologist; Dr. Christopher Macadam, a chiropractor; and Mr. Paul D'Orio, a building inspector.[1] Defendant Frank Covone (Covone) testified for the defense. In addition, evidence was presented by exhibits, including photographs.
 II. FACTS
The court finds the following facts and credits the following evidence, except as noted. Mitchell moved into the apartment in May, 1996, a little over one year before the date of the claimed accident. While he lived there, Mitchell observed looseness, cracks and broken pieces on the steps. While he testified that he told Covone of the need for repairs in May, 1997 and that Covone had said that repairs would be made, he never observed Covone or anyone else perform any repairs to the steps. Transcript ("Tr."), pp. 13, 81. He testified that he could not CT Page 8862 recall telling Covone that there were steps that moved or rocked. Tr., pp. 88-89. Without specifying a location, he stated that at points he observed that more nails had been put into the steps. He was unspecific as to when that occurred. Tr., p. 13. Covone credibly testified that, while Mitchell made other complaints to him, Mitchell never complained about the stairs. Tr., pp. 130, 132. On the whole, in view of its vagueness, and in view of Covone's credible testimony to the contrary, the court does not credit Mitchell's testimony concerning prior discussion with Covone about the condition of the stairs.
On or about June 12, 1997, Mitchell was wearing work boots and went down the stairs when an unidentified tread on one of the steps tipped forward, causing him to lose his balance and fall, after which he landed on the bottom of his spine. Tr., p. 15, 18. He could not identify the loose tread which caused him to fall. Tr., p. 88. When asked "about how many steps down" it was, he stated, "Five-ish. Five. Six. Right about there (indicating a place on Plaintiffs Exhibit 6)." Tr., p. 14-15.[2]
His fall ended at twelve or fourteen steps down. Tr., p. 16. Thus, he only indicated a general area on the stairs where he fell, and not the specific location. Tr., p. 88.
On the day before he fell, he had no problem with the steps. Tr., p. 88. Mitchell had fallen on the stairs previously. Tr., p. 19, 84, 86. He went up and down the steps once or more every day. Tr., p. 85.
When he continued to suffer back pain about two weeks after the June, 1997 fall, he sought medical attention. Tr., p. 21. He underwent physical therapy and continues to be seen by his chiropractor on an occasional basis. He received a permanent partial disability rating of six per.cent of the whole person for the injuries he received.[3]
Mr. D'Orio testified that he had reviewed photographs of the stairway. The probative value of this testimony was diminished by the fact that Mr. D'Orio had never inspected the actual stairway itself. In his view, the stairway was in a generally deteriorated condition, including that the treads were uneven, rotted and cracked; the risers had rotted; the stairs were poorly maintained; the treads were pulling away from the house; and a guardrail was missing. In his opinion, the existing stairway did not conform to the building code.
Covone credibly testified for the defense. He was responsible for maintaining the whole apartment house at the times in question, including the stairway. He and his wife had owned the property for over four years at the time of the claimed fall. Tr., p. 129. The stairs were there when they took over the property. Tr., p. 129. CT Page 8863
Covone was not advised of Mitchell's claim about falling down the stairs until some time after the alleged occurrence, when he sought to collect rent from Mitchell. Covone went up and down the stairs two or three times a week when Mitchell lived there and never noticed a problem with them. Tr., pp. 130-131. While he assumed the stairs were safe since he used them regularly, he did not inspect the stairs. Tr., p. 143.
Covone did not construct the stairs. He did install the lattice work on the side of the stairs. Tr., pp. 137-138. He also painted and scraped the stairs once. Tr., p. 138. He agreed that a photograph, Plaintiffs Exhibit 5, showed cracking in a tread and another tread which was tilted. Tr., pp. 140-141. He himself never did any work fastening the treads. Tr., p. 141.
 III DISCUSSION
Mitchell has not sustained his burden of proof as to liability by a fair preponderance of the evidence. Possession and control of leased premises are the linchpins of premises liability claims against lessors. See Mack v. Clinch, 166 Conn. 295, 296, 348 A.2d 669 (1974). Control has been defined as "the power or authority to manage, superintend, direct or oversee." (Internal quotation marks omitted.) Alderman v. Hanover Ins.Group, 169 Conn. 603, 606, 363 A.2d 1102 (1975). Where, as in this case, concerning the stairway, the landlord retained control, "the landlord must use reasonable care to keep that portion of the premises in a reasonably safe condition." Mack v. Lavalley, 55 Conn. App. 150, 162,738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). "In order to demonstrate a breach of this duty the plaintiff must show that the defendants had actual knowledge of the defect or that they were chargeable with constructive notice of it, because, had they exercised a reasonable inspection of the premises, they would have discovered it."Pollock v. Gampel, 163 Conn. 462, 468, 313 A.2d 73 (1972). "It is a familiar rule that the landlord is under a duty to use reasonable care to keep those parts of his building which are under his control in a reasonably safe condition and that if he fails in that duty and has actual or constructive notice of the defect in time to remedy it an injured plaintiff who is himself in the exercise of due care can recover." (Internal quotation marks omitted.) McCrorey v. Heilpern,170 Conn. 220, 221, 365 A.2d 1057 (1976).
In essence, the landlord owes the same duty to a tenant in such circumstances as is owed to an invitee. "For the plaintiff to recover for the breach of a duty owed to [him] as a business invitee, [he] had to allege and prove that the defendant[s] had actual or constructive notice of the presence of the specific unsafe condition that caused [his] fall. . . . Either type of notice must be notice of the very defect which CT Page 8864 occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . If the plaintiff, however, alleges an affirmative act of negligence, i.e., that the defendants conduct created the unsafe condition, proof of notice is not necessary." (Internal quotation marks omitted and citations omitted.) Fuller v. First National Supermarkets, Inc., 38 Conn. App. 299,301, 661 A.2d 110 (1995).[4] "On the question of notice the triers consideration must be confined to the defendant's knowledge and realization of the specific condition causing the injury, and such knowledge cannot be found to exist from a knowledge of the general or overall conditions obtaining on the premises." (Internal quotation marks omitted.) Boretti v. Panacea Co., 67 Conn. App. 223, 228, 786 A.2d 1164
(2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002).
Here, there is no question that Mitchell never gave advance notice to the Covones of the specific defect which later caused him to fall. As the record reflects, he could not identify the specific defect after he fell, let alone beforehand. In his closing, Mitchell conceded that "although he couldn't point to the particular tread that caused the fall, he pointed to the general area." Tr., p. 148.[5] The evidence shows that, on the day before the fall, Mitchell had no problem with the steps. Mitchell has not shown that notice of the specific defect, either actual or constructive, occurred in time to give the defendants the opportunity to effect a remedy.
Instead, Mitchell argues that since the defendants "created" the unsafe condition, notice need not be proved. In his closing, his counsel argued, "[a]lthough, the [d]efendants did not create the defect, the [d]efendants allowed it to exist and failed to take the necessary steps to cure it." Tr., p. 148. As our Appellate Court noted in Fuller, quoted above, Connecticut law requires an affirmative act of negligence in causing the defect in order to dispense with the requirement of proof of notice of the specific defect.
For example, in Fuller, the affirmative act alleged was that the defendant "caused pricing stickers to accumulate on the floor of the supermarket," resulting in the plaintiffs fall. Fuller v. First NationalSupermarkets, Inc., supra, 38 Conn. App. 303. See also Holody v. FirstNational Supermarkets, Inc., 18 Conn. App. 553, 556, 559 A.2d 723 (1989) (alleged affirmative act involved placing juice boxes in a dangerous position).
In contrast, allowing a condition to remain in a state of general disrepair is not the equivalent of an affirmative act of negligence. SeeWilson v. New Haven, 213 Conn. 277, 281, 567 A.2d 829 (1989) (allowing a sidewalk to fall into disrepair does not amount to creating the CT Page 8865 condition); Gambardella v. Kaoud, 38 Conn. 355, 359 n. 4, 660 A.2d 877
(1995).
Mitchell has not proved that the defendants created a defective condition by an affirmative act of negligence. Under the circumstances, he had the burden to prove that the defendants had timely notice of the specific defect which later caused his injuries. He has not met this burden. With the plaintiff having failed to establish a necessary element of his claim of negligence, judgment may enter for the defendants.[6]
 CONCLUSION
For the foregoing reasons, judgment may enter for the defendants. It is so ordered.
BY THE COURT
 ___________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT